IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EDITH CHOMA | ) | |
| | ) | |
| Plaintiff, | ) | C.A. NO. |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| BLUE CROSS BLUE SHIELD | ) | |
| OF DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

## INTRODUCTION

1.  This is a Complaint brought pursuant to the *Americans with Disabilities Act of 1990*,
    codified as 42 U.S.C. §12101 et seq. and the *Age Discrimination in Employment Act
    of 1967*, codified as 29 U.S.C. §621 et seq.

## PARTIES

2.  Plaintiff, Edith Choma (hereinafter "Plaintiff"), was at all times relevant to this
    Complaint, a resident of the State of Delaware, residing at 3210 Dunlap Drive,
    Wilmington, Delaware 19808. Plaintiff is a 67 year old female who, according to the
    Emergency Doctor's notes, did suffer from a scaphoid tear in her wrist from an
    Emergency Room Doctor at relevant times to the complaint and also suffered and
    continues to suffer from a loss of hearing.

3.  Defendant, Blue Cross Blue Shield of Delaware (hereinafter "Defendant"), is and was
    at all times relevant to this Complaint, a Delaware corporation whose registered agent
    for the service of process is  BCBSD, Inc., One Brandywine Gateway, 201 West 14th
    Street, Wilmington, DE 19801.

1

## JURISDICTION AND NATURE OF ACTION

4.    The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights secured by federal laws which prohibit discrimination against employees on the basis of age, in the terms, conditions and privileges of employment, and which prohibit retaliation against an employee for exercising such rights under Title VII of the *Civil Rights Act of 1962*, as amended, 42 U.S.C. §2000(e) et seq. (hereinafter "Title VII"), the *Age Discrimination in Employment Act of 1967*, as amended, 29 U.S.C. §621 et seq., and to secure protection and redress deprivation of similar rights secured by 19 Del. C. §711.

5.    Jurisdiction is also founded on the existence of a question arising under federal statutes. This action arises under the *Americans with Disabilities Act of 1990*, 42 U.S.C. §12101 et seq. and 28 U.S.C. §§1331 and 1343(4) (the "ADA"). The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights secured by federal law, which prohibits discrimination against employees because of their disability.

6.    An additional jurisdictional basis for Plaintiff's state law claim exists under the principles of pendant and supplemental jurisdiction and 28 U.S.C. §1367.

7.    The state law claim regarding the breach of the implied covenant of good faith and fair dealing is brought pursuant to the pendant jurisdiction of this Court.

8.    Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. §2000(e), (f), and (g).

9.    Plaintiff exhausted all administrative remedies before bringing this action, and received a Right to Sue letter from the U.S. Equal Employment Opportunity

2

Commission (hereinafter "EEOC") dated May 9, 2006 (attached hereto at Tabs A and B).

## FACTUAL BACKGROUND

10. Plaintiff began her employment with Defendant in 1989.

11. In or about 1994, Plaintiff became a qualified individual with a disability who is able to perform the essential functions of her position with reasonable accommodation.

12. In 1999, Plaintiff began working for Dr. Paul Kaplan, Medical Director of Medical Management (hereinafter "Dr. Kaplan"), as his secretary and the divisional secretary of the department.

13. During a meeting to discuss the Plaintiff's first performance review with Dr. Kaplan in 1999, Kaplan made several discriminatory and inappropriate statements to Plaintiff such as "I can't stand the way you lift up your glasses to see the screen!", "Maybe it's your Thyroid", "Maybe the blood isn't getting to your brain!" and "You know the saying "Kick the Dog", that's why I treat you the way I do!" causing the Plaintiff to feel extreme humiliation and embarrassment.

14. Shortly after this meeting with Dr. Kaplan, Plaintiff contacted the Director of Human Resources, Vicki Sessoms (hereinafter "Sessoms"), and advised her of the remarks made to Plaintiff by Dr. Kaplan.

15. Vicki Sessoms and Plaintiff met and reviewed all the notes that Plaintiff had written about Dr. Kaplan's performance review. Plaintiff asked Ms. Sessoms if she needed a copy of any of Plaintiff's notes and Ms. Sessoms responded, "No, I've heard enough". Ms. Sessoms immediately went to Dr. Kaplan's office and slammed the door.

16.    Ms. Sessoms instructed Dr. Kaplan to re-evaluate Plaintiff's performance.

17.    Thereafter, Ms. Sessoms advised Plaintiff that she would be getting a re-evaluation
       and that Joe Hall (hereinafter "Mr. Hall") from Human Resources would meet with
       Plaintiff to discuss the re-evaluation.

18.    Although the normal pay increase was at least 3%, Plaintiff received a 1% raise. Mr.
       Hall informed Plaintiff that the 1% raise was all that Dr. Kaplan would give her.

19.    When Plaintiff addressed her concern that she was only receiving a 1% raise when the
       normal pay increase was at least 3%, Dr. Kaplan explained that if it was up to him
       Plaintiff would not have received any increase in her salary.

20.    Dr. Kaplan made discriminatory remarks about Plaintiff's hearing condition and how
       he views it as a draw back to her performance.

21.    In January of 2002, Plaintiff's department began using a new payroll system which
       required time sheets to be turned in to Jean Runyan in Payroll and signed the Friday
       the time sheet was due. Dr. Kaplan advised Plaintiff that he did not know whether he
       would have enough time to sign the time sheets and proceeded to yell at Plaintiff
       because he thought time sheets were "stupid work".

22.    One of the associates, Theresa Smith, overheard Dr. Kaplan yelling at Plaintiff and
       Theresa Smith went into Dr. John Castiglioni's office, the Associate Director, and
       asked "Why does Kaplan treat her that way?". Theresa Smith also asked Plaintiff on
       Monday, March 11, 2002, "Why does he treat you like that? If you were younger he
       wouldn't treat you that way."

23.    On or about May 22, 2002, Dr. Kaplan refused to allow Plaintiff to attend the
       Financial Planning Seminar because according to Dr. Kaplan, Plaintiff's work was

"backed up". The other Secretary, Christine Zakutny's work was also "backed up". However, the supervisor, Nina Frazier, asked Christine Zakutny to participate in the seminar while Plaintiff was instructed by Dr. Kaplan to complete Christine Zakutny's work so Zakutny could participate in the seminar. Also, Plaintiff pointed out to Dr. Kaplan that her work had been completed, however, Dr. Kaplan would still not allow her to attend the training.

24.     On or about July 26, 2002, during a reorganization, Plaintiff , age 63, was reassigned from her position as the Divisional Secretary for Dr. Kaplan, Chief Medical Officer, to Divisional Secretary for Deborah Sweeney (hereinafter "Ms. Sweeney").

25.     At this same time, Patricia Carpenter (hereinafter "Ms. Carpenter"), age 49, was promoted from Administrative Assistant to the Director of Quality Improvement to administrative assistant for the department with most of her assignments coming from Dr. Kaplan.

26.     Dr. Kaplan hired Ms. Carpenter into the position as an Administrative Assistant, without giving Plaintiff proper consideration for the position.

27.     Plaintiff was demoted on August 12, 2002 when Dr. Kaplan moved Plaintiff to another department to work under Ms. Sweeny.

28.     On or about October 29, 2002, Plaintiff submitted a written complaint to the Defendant's Human Resources Department concerning Dr. Kaplan's discriminatory behavior; yet nothing was done to remedy her situation.

29.     Plaintiff began treatment for Major Depression on November 24, 2002 with Dr. Norman Broudy. She suffered, and continues to suffer from depressed mood, crying, irritability, anxiety, worry, disturbed sleep, fatigue and difficulty concentrating.

Plaintiff did not have a history of depression prior to 1999 when her work situation became more stressful due to harassment and discrimination.

30.    On or about November 25, 2002, Plaintiff originally filed a charge of discrimination with the Delaware Dept. of Labor ("DDOL") and dual-filed with the EEOC, based on her age, 63 and her disability, hearing impairment.

31.    Plaintiff told Donna May, the Human Resources Representative, that Dr. Kaplan had been "treating her poorly ever since she complained about her 1999 performance review, and had often made disparaging remarks about her hearing and intelligence." Plaintiff also told Donna May that she should have been allowed to apply for the position as the Lead Assistant which was given to Ms. Carpenter, a 49-year old female.

32.    The second time Plaintiff was demoted was on August 9, 2004 when Patricia Carpenter became her immediate supervisor.

33.    Plaintiff's supervisor, Ms. Sweeney, the Quality Improvement Director, overly scrutinized Plaintiff's performance, regularly threatened her with disciplinary actions, and subjected Plaintiff to disparate treatment with regards to the Defendant's policies concerning "Makeup Time and Overtime."

34.    While under the supervision of Ms. Sweeney, Plaintiff was also required to complete additional assignments for Dr. Kaplan which caused her stress because of the large volume of work.

35.    Since Plaintiff was required to complete work for two different Directors, Dr. Kaplan and Ms. Sweeney, she was organized, efficient and multi-task oriented.

36. On or about August 23, 2004, a series of e-mails was sent to Plaintiff by Ms. Sweeney concerning the lack of speed and accuracy of her typing assignments.

37. During this time, in or around August 23, 2004, Plaintiff's hand movement was limited because on August 19, 2004, Plaintiff was involved in a non work-related accident, resulting in her right hand being injured and placed in a cast and sling.

38. Ms. Sweeney's emails failed to acknowledge the fact that Plaintiff was working at a disadvantage because she was attempting to complete various typing assignments while her primary typing hand was in a cast.

39. Further, Plaintiff was often discouraged from working overtime hours or from working through her lunch break to ensure that her assignments were completed in a timely manner.

40. Ms. Sweeney would force Plaintiff to work late hours to complete her daily assignments, but would refuse to pay her for the overtime worked. She did this by refusing to sign time sheets that indicated that Plaintiff had worked over time hours.

41. Plaintiff was written-up by Ms. Sweeney on or about August 25, 2004, because Plaintiff worked through her lunch on August 23, 2004 without getting permission to catch up on her assignments.

42. August 23, 2004 was Plaintiff's first day back after injuring her hand and she was still in a lot of pain.

43. Ms. Zakutny, a secretary who was also assigned to Plaintiff's department was regularly allowed to work overtime and was allowed a great deal of flexibility with her "Makeup Time" privileges and was not subjected to the same time constraints as Plaintiff with regards to completion dates of assignments.

44.  Defendant's policy states that "non-exempt employees who need to take time away from work during their workday are entitled to make up a maximum of 1 ½ hours of time away from work during business hours every week."

45.  Contrary to Defendant's policy, Plaintiff was the only employee in her section required to give one-day notice for appointments to be used as paid time off.

46.  A finding of probable cause was issued by DDOL on October 31, 2003. The EEOC also issued a finding of probable cause on February 25, 2005.

47.  On or about October 22, 2004, Plaintiff filed a charge of discrimination with both the DDOL and the EEOC claiming that she was subjected to retaliation by the Defendant as a result of both her internal and external complaints of discrimination.

48.  In or around October 2004, Plaintiff was singled out and required to complete a daily log for Ms. Sweeney which was designed to monitor the time it took for Plaintiff to complete each of her typing assignments.

49.  Also, on or about October 29, 2004, Ms. Sweeney placed Plaintiff on a Performance Improvement Plan (PIP) with specific emphasis on the time it took Plaintiff to complete her assignments.  Ms. Sweeney would often come to Plaintiff's desk and tell her that she was going to time Plaintiff's typing.

50.  When Plaintiff and a group of her co-workers returned to work late after their lunch break, Plaintiff was the only employee cited for her lateness. Ms. Sweeney demanded to know when Plaintiff left and came back from lunch every day.

51.  Plaintiff was subjected to retaliatory actions and a hostile work environment because of her original charge which ultimately resulted in her being constructively

discharged in or around February 1, 2005 in that she was forced to retire as a result of the hostile work environment.

52.    Plaintiff wrote the following on her Exit Interview Form: "forced to retire, had no other options because of the constant harassment."

## COUNT I
### *Violation of the Age Discrimination in Employment Act*

53.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 52 by reference as if specifically set forth herein.

54.    Plaintiff was over the age of forty (40) at all relevant times to this Complaint.

55.    The practices of Defendant, as complained of above, had the effect of depriving Plaintiff of equal employment opportunities and otherwise affected her employment because of her age.

56.    The practices employed by Defendant violate Plaintiff's rights under the *Age Discrimination in Employment Act* ("ADEA") were intentional and were done with malice and/or reckless indifference to the federally-protected rights of Plaintiff and were designed to further injure Plaintiff.

57.    The practices of Defendant, as complained of above, caused Plaintiff to experience conscious pain and suffering and other emotional harm.

58.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer, loss of employment, loss of income, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment, and damages to her reputation.

## COUNT II

### *Violation of 19 Del. C. §711*

59.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 58 by reference as if specifically set forth herein.

60.     Defendant's aforesaid actions constituted discrimination against Plaintiff on the basis of age in violation of 19 *Del. C.* §711.

61.     Defendant's violation of Plaintiff's rights under 19 *Del. C.* §711 was intentional and therefore were done with malice and reckless indifference to the federally-protected and state-protected rights of Plaintiff and were designed to further injure Plaintiff.

62.     As a direct and  proximate result of said acts, Plaintiff has suffered and continues to suffer, loss of employment, loss of income, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment, and damages to her reputation.

### COUNT III
### *Violation of 19 Del. C. §723, §724, §726*

63.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 62 by reference as if specifically set forth herein.

64.     Defendant's aforesaid actions constituted discrimination against Plaintiff on the basis of an actual and/or perceived disability in violation of 19 <u>Del. C.</u> §723, §724, §726.

65.     Defendant's violation of Plaintiff's rights under 19 <u>Del. C.</u> §723, §724, §726 was intentional and therefore was done with malice and reckless indifference to the federally-protected and state-protected rights of Plaintiff and was designed to further injure Plaintiff.

66.     As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer, loss of employment, loss of income, loss of other employment benefits, and

has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment, and damages to her reputation.

**COUNT IV**
***Violation of the Americans with Disabilities Act (the "ADA")***

67.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 66 by reference as if specifically set forth herein.

68.    Defendant violated Plaintiff's rights under the ADA by discriminating against her as a result of a disability.

69.    Defendant violated Plaintiff's rights under the ADA by discriminating against her as a result of a perceived disability.

70.    Defendant violated Plaintiff's rights under the ADA by denying her request for a reasonable accommodation due to her disability.

71.    At all relevant times, Plaintiff was able to perform the essential functions of her position as secretary

72.    Defendant's violations of Plaintiff's rights under the ADA were intentional and therefore were done with malice and reckless indifference to the federally-protected rights of Plaintiff and were designed to further injure Plaintiff.

73.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer, loss of employment, loss of income, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment, and damages to her reputation.

## COUNT V
### *Disability Discrimination*

74. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 73 by reference as if specifically set forth herein.

75. The practices of Defendant, as complained of above, had the effect of depriving Plaintiff of equal employment opportunity and otherwise adversely affected her employment because of an actual and/or perceived disability. The practices of Defendant were intentional and therefore were done with malice and reckless indifference to the federally-protected and state-protected rights of Plaintiff and were designed to further injure Plaintiff.

76. Defendant failed to provide reasonable accommodations to Plaintiff based upon Plaintiff's disability.

77. The practices of Defendant, as complained of above, caused Plaintiff to experience conscious pain and suffering and other emotional harm.

78. As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer, loss of employment, loss of income, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment, and damages to her reputation.

## COUNT VII
### *Retaliation*

79. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 78 by reference as if specifically set forth herein.

80. The practices of Defendant, as complained of above, had the effect of depriving Plaintiff of equal employment opportunities or otherwise adversely affected her

employment through repeated acts of retaliation directed toward Plaintiff, for filing a complaint with the Delaware Department of Labor about Defendant's treatment, for complaining repeatedly to Human Resources about the disparate treatment and for complaining repeatedly when she was not treated similarly to other similarly situated co-workers.

81.  The practices employed by Defendant to retaliate against Plaintiff were intentional and were done with malice and/or reckless indifference to the federally-protected rights of Plaintiff and were designed to further injure Plaintiff.

82.  The practices of Defendant, as complained of above, caused Plaintiff to experience conscious pain and suffering and other emotional harm.

83.  As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer, loss of employment, loss of income, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment, and damages to her reputation.

## COUNT VIII
### *Failure to Promote*

84.  Paragraphs 1 - 83 are hereby incorporated by reference.

85.  Defendant denied Plaintiff career advancement opportunities by refusing to consider her for a Director of Quality Improvement position. The position was not posted and was assigned to another Administrative Assistant.

86.  Plaintiff was denied a normal pay increase of 3% and received a pay raise of 1%.

87.    Defendant, in addition demoted Plaintiff twice on August 12, 2002 and on August 9, 2004.

88.    As a result of Defendant's actions, Plaintiff has lost considerable pay; past, present and future and prospective and suffered and continues to suffer humiliation, mental anguish and emotional pain.

## COUNT IX
### *Breach of the Covenant of Good Faith and Fair Dealing*

89.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 88 by reference as if specifically set forth herein.

90.    The actions of Defendant constitute a violation of the Covenant of Good Faith and Fair Dealing implicit in every employment agreement.

91.    Defendant breached the Covenant of Good Faith and Fair Dealing to Plaintiff by terminating her based upon an actual and/or perceived disability and/or based upon her limitations due to her disability and/or based upon retaliatory motives, and by discriminating against her based upon her age.

92.    Defendant's discrimination was willful, wanton, and malicious.  As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

93.    The above-stated damages were not the result of any act or omission on the part of the Plaintiff.

**WHEREFORE**, Plaintiff Edith Choma, respectfully requests that this Court enter judgment in her favor and against Defendant, Blue Cross Blue Shield of Delaware:

(a)     Declaring that the conduct engaged in by the Defendant to be in violation of Plaintiff's rights;

(b)     Issuing a judgment in Plaintiff's favor ordering Defendant to provide appropriate back pay with pre- and post-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices;

(c)     Issuing a judgment in Plaintiff's favor ordering Defendant to provide compensation for non-pecuniary losses, including, but not limited to, pain, suffering, and humiliation, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices;

(d)     Issuing a judgment in Plaintiff's favor ordering Defendant to provide compensation for past and future pecuniary losses, in amounts to be determined at trial;

(e)     Issuing a judgment in Plaintiff's favor ordering Defendant to pay punitive damages for its malicious and/or reckless conduct in amounts to be determined at trial;

(f)     Issuing a judgment in Plaintiff's favor ordering the Defendant to pay the costs of reasonable attorneys' fees and expenses and the costs of this litigation; and

(g)     Granting such other further relief as this Court deems just and proper.

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (#2407)
Lori A. Brewington, Esquire (#4522)
1509 Gilpin Avenue
Wilmington, Delaware 19806
302-777-4680 phone
302-777-4682 facsimile
Attorneys for Plaintiff Edith Choma

Dated:  August 7, 2006

# TAB A

EEOC Form 161-A (10/96)                    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE

*(CONCILIATION FAILURE)*

To:Ms. Edith A. Choma                         From:
   3210 Dunlap Drive                              Equal Employment Opportunity Commission
   Wilmington, DE 19808                            Philadelphia District Office
                                                   The Bourse
                                                   21 S. Fifth Street, Suite 400
                                                   Philadelphia, PA  19106-2515

|  |  | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR § 1601.7(a))* |
|---|---|---|

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17C-2003-00104 | Legal Unit | (215) 440-2828 |

This Notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that is will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice;** otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit **may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Marie M. Tomasso, District Director

May 9, 2006
*(Date Mailed)*

Enclosure(s)

cc:    Scott A. Holt, Esq. (For Respondent Blue Cross Blue Shield of Delaware)

# TAB B

EEOC Form 161-A (10/96)

**U.S. LEGAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE
*(CONCILIATION FAILURE)*

RECEIVED
MAY 16 2006
BY:

To: Ms. Edith A. Choma
3210 Dunlap Drive
Wilmington, DE 19808

From:
Equal Employment Opportunity Commission
Philadelphia District Office
The Bourse
21 S. Fifth Street, Suite 400
Philadelphia, PA 19106-2515

[    ]    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17C-2005-00043 | Legal Unit | (215) 440-2828 |

This Notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that is will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> from your receipt of this Notice**; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Marie M. Tomasso, District Director              May 9, 2006
                                                 *(Date Mailed)*

Enclosure(s)

cc:    Scott A. Holt, Esq. (For Respondent Blue Cross Blue Shield of Delaware)
       Jeff Martin, Esq. (For Charging Party)

℗JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

EDITH CHOMA

## DEFENDANTS

BLUE CROSS BLUE SHIELD OF DELAWARE

**(b)** County of Residence of First Listed Plaintiff NEW CASTLE
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant NEW CASTLE
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) LORI BREWINGTON
MARGOLIS EDELSTEIN, 1509 GILPIN AVE, WILMINGTON, DE 19806
(302) 777-4680

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **PRISONER PETITIONS** ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | **Habeas Corpus:** ☐ 530 General | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C § 2000(e) et seq.; 29 U.S.C § 621 et seq.; 19 U.S.C § 711

Brief description of cause:
Employment Discrimination based on age; Title VII, ADEA Violation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____  DOCKET NUMBER _____

DATE
8/7/06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. ___ 0 6 - 4 8 6 ___

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____1____ COPIES OF AO FORM 85.

_____8/7/06_____          _____
(Date forms issued)           (Signature of Party or their Representative)

                              FRANK JOYCE / PARCELS, INC
                              _____
                              (Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action