IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EDITH CHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-486-JJF |
| | ) | |
| BLUE CROSS BLUE SHIELD | ) | JURY TRIAL DEMANDED |
| OF DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Pursuant to the discovery dispute procedures set forth in the agreed upon Scheduling Order, Fed. R. Civ. P. 26(c) and 30(d) and District of Delaware Local Rule 30.2, Defendant Blue Cross Blue Shield of Delaware hereby moves the Court for a protective order staying and limiting Plaintiff's attempted discovery of medical records concerning one of Defendant's employees because: (1) the discovery period has closed; (2) the subpoena was not served in compliance with federal rules; and (3) it seeks documents on topics with no relevance to the claims or defenses and is merely designed to harass and annoy Plaintiff's former supervisor.   In support of its motion, Defendant hereby states as follows:

### FACTUAL BACKGROUND

This is an employment discrimination case.  Plaintiff claims she was discriminated against because of her age, disability, and in retaliation for filing a charge of discrimination. The initial scheduling order was issued by this Court on December 12, 2006.  Plaintiff

052305.1028

subsequently requested and was granted two (2) extensions of the discovery deadline, the last

deadline being October 1, 2007. See D.I. 47.

Dr. Kaplan was Plaintiff's supervisor from 1999 – 2002. During his deposition,

Dr. Kaplan testified that in 1996, three years before he even worked with Plaintiff, he

slipped in a stairwell and hit his head which resulted in some memory loss, but that it did

not effect his memory going forward. Exhibit A, Kaplan Tr. 34-36; 70-71.

On or around October 11, 2007, Plaintiff issued a subpoena *duces tecum* from this Court

to be served on Disability Management Services ("DSM"), located at 1350 Main Street,

Springfield, Massachusetts, requesting it produce the following categories of documents:

> Any and all records in your possession, custody or control reflecting or
> relating to the August 1996 head injury suffered by Paul Andrew Kaplan
> (DOB 4/28/61), and loss of memory or personality change suffered by
> Paul Andrew Kaplan as a result of that head injury. Penn Mutual Life
> Insurance Disability Policy number 07934757.

Defendant's motion should be granted and the subpoena quashed.[1]

Plaintiff's subpoena was issued well past the Court imposed deadline for discovery. The

subpoena itself is defective because it was served outside this Court's jurisdiction.

Furthermore, the documents Plaintiff seeks are irrelevant to the issues in the

discrimination case. Indeed, her request is designed merely to harass and embarrass

Plaintiff's former supervisor by requesting medical information for an injury he sustained

over 11 years ago, and which he testified did not effect his memory during the time he

worked with Plaintiff.

---

[1] Defendant's counsel notified Plaintiff's counsel by copy of a letter dated October 22, 2007 that Defendant would
be seeking to quash the subpoena. Plaintiff has not withdrawn its discovery request.

052305.1028

## **ARGUMENT**

Rule 26(c) of the Federal Rules of Civil Procedure authorizes this Court, for good cause shown, to issue a protective order concerning disclosure of information so as to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Good cause exists in this case for a multitude of reasons.

The Discovery Request is Untimely.

Plaintiff had approximately ten (10) months to conduct discovery in this case. She requested and received two (2) extensions on the discovery deadline. Yet, despite ample time and opportunity, she waited until ten (10) days after the expiration of the discovery deadline to issue a subpoena for the documents in question. Plaintiff also failed to file a motion requesting an extension of the October 1, 2007 deadline for the completion of discovery prior to the expiration of the deadline. See Local Rule 16.5. As a result, Plaintiff discovery is a clear circumvention of the Court's order to have all discovery completed by October 1, 2007. See D.I. 47.

The Subpoena Does Not Comply With Rule 45.

Plaintiff also did not serve the subpoena in accordance with federal rules. Federal Rule of Civil Procedure 45 provides, in relevant part, that "a subpoena may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition..." F.R.C.P. 45(b)(2). In the instant case, the subpoena was served on a Massachusetts company located at 1350 Main Street, Springfield, Massachusetts. This location is over 200 miles from Delaware

3

and outside of the service area required by Rule 45. As a result, the discovery request should be denied because it does not comport with applicable federal rules.

Plaintiff's Discovery Request Is Designed to Harass and Annoy Her Former Supervisor.

Plaintiff's subpoena seeks medical records from a disability provider who provided benefits to Dr. Paul Kaplan, her supervisor from 1999 -2002, arising out of an injury he sustained when he slipped in a stairwell in 1996. The discovery of these documents has no relevance to Plaintiff's claims of discrimination and is unlikely to lead to the discovery of admissible evidence. Dr. Kaplan testified that it did not effect his memory during the time when he worked with Plaintiff. Thus, the only reason why Plaintiff has subpoenaed this irrelevant information is simply to embarrass and antagonize her former supervisor. Defendant has good cause for a protective order to prevent this discovery request which is without merit and untimely.

## **CONCLUSION**

WHEREFORE, Defendant seeks a protective order from this Court in the form attached hereto.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/  *Scott A. Holt*

Scott A. Holt, Esquire (No. 3399)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6623
Facsimile: (302) 576-3299
sholt@ycst.com
Attorneys for Defendant

DATED:  October 25, 2007

4

# EXHIBIT A



**WILCOX & FETZER LTD.**

## In the Matter Of:

# Choma

## v.

# Blue Cross Blue Shield of Delaware

### C.A. # 06-486-JJF

---

### Transcript of:

### Kaplan, M.D., Paul A. (10/1/2007)

### October 1, 2007

---

Wilcox and Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: depos@wilfet.com
Internet: www.wilfet.com

## Choma v. Blue Cross Blue Shield of Delaware
## Paul A. Kaplan, M.D.

Page 34

1    A.    That's correct.

2    Q.    At Sea Colony?

3    A.    Correct.

4    Q.    What were the circumstances of the head injury?

5    A.    I fell down a flight of stairs.

6    Q.    Were you on vacation at that time?

7    A.    Correct.

8    Q.    As I understand it you allege that Sea Colony

9    was negligent in connection with your fall, how were

10   they negligent or how were they alleged to be

11   negligent?

12   A.    It was a flight of stairs that was completely

13   surrounded by four walls, had a roof and yet water was

14   leaking in, there was a bad storm, and I slipped on a

15   puddle.

16   Q.    Hit your head?

17   A.    Yes.

18   Q.    And what was the nature of the injuries that

19   you suffered in that fall?

20   A.    I'm sorry, can you be more specific?

21   Q.    You said you had a head injury, could you tell

22   me more specifically what the nature of that head

23   injury was or those head injuries were?

24   A.    I hit my head.

Electronically signed by Christina Vitale (201-232-221-2474)
Electronically signed by Christina Vitale (201-232-221-2474)                    f6080351-44b7-44d2-b6d6-67f2ac405b10

Choma v. Blue Cross Blue Shield of Delaware
Paul A. Kaplan, M.D.

Page 35

1    Q.   But you are a doctor, what are the medical

2    terms for what happened to your head after you hit it?

3                MR. HOLT:  I'll just make an objection to

4    form.  You can answer.

5    A.   You are going to have to clarify what it is you

6    are actually asking me, please.

7    Q.   As I understand it you slipped on the wet

8    stairs and you fell on the stairs and you struck your

9    head, is that correct?

10   A.   Correct.

11   Q.   After that if I am -- were you unconscious as a

12   result of that fall?

13   A.   I think so.

14   Q.   And were you transported to a hospital --

15   A.   No.

16   Q.   -- by emergency?

17   A.   No.

18   Q.   How did you get to the hospital?

19   A.   I did not go.

20   Q.   So, ultimately did you go to the hospital?

21   A.   I saw a physician yes.

22   Q.   Who did you see?

23   A.   My family physician.

24   Q.   Who is that?

Electronically signed by Christina Vitale (201-232-221-2474)
Electronically signed by Christina Vitale (201-232-221-2474)                    f6080351-44b7-44d2-b6d6-67f2ac405b10

Choma v. Blue Cross Blue Shield of Delaware
Paul A. Kaplan, M.D.

Page 36

1    A.    Dr. Bernard King.

2    Q.    Is he a pretty good doctor?  He is my doctor

3    too.

4    A.    Can you clarify the question?

5    Q.    I find Dr. King to be an excellent physician,

6    do you agree with my view?

7    A.    I think he is fine, yes.

8    Q.    And did Dr. King give you a diagnosis for the

9    injuries that you suffered?

10    A.    He gave me a preliminary diagnosis, yes.

11    Q.    What did he tell you?

12    A.    That I had some memory loss.

13    Q.    As a result of striking your head?

14    A.    I assume as much.

15    Q.    How long after your fall did you see Dr. King?

16    A.    I think it was seven days.

17    Q.    You said that you believe that you were

18    unconscious as a result of the fall, how long were you

19    unconscious do you believe?

20    A.    I have no idea.  All I can tell you is I was

21    gone for longer than I should have been gone for what

22    I said I was going to do.  So, I have no idea.

23    Q.    Would you have been unconscious for a day, an

24    hour, a month?  Approximately how long?

Electronically signed by Christina Vitale (201-232-221-2474)
Electronically signed by Christina Vitale (201-232-221-2474)                f6080351-44b7-44d2-b6d6-67f2ac405b10

Choma v. Blue Cross Blue Shield of Delaware
Paul A. Kaplan, M.D.

Page 70

1    to you?

2        A.    No.

3        Q.    Did somebody come to you and tell you that

4    Edith Choma would be directly reporting to you?

5        A.    Not that I recall, no.

6        Q.    After Dr. Powell took his early retirement and

7    left you took over the responsibilities that had been

8    his position, correct?

9        A.    Correct.

10       Q.    Who did you report to after that happened?

11       A.    Tim Constantine.

12       Q.    What was his position?

13       A.    He was the vice-president overseeing

14    contracting and medical management.

15       Q.    During this period of time, and I'm talking

16    about between 1997 and, say, 1999, did you continue to

17    experience memory loss -- strike that.  That's not a

18    good question.  During the period of time April 1997

19    through 1999 did you experience memory loss that

20    affected your work in any way?

21       A.    I don't believe it did.

22       Q.    Did you experience memory loss during that time

23    period?

24       A.    I had the initial memory loss that had never

Electronically signed by Christina Vitale (201-232-221-2474)
Electronically signed by Christina Vitale (201-232-221-2474)                    f6080351-44b7-44d2-b6d6-67f2ac405b10

Choma v. Blue Cross Blue Shield of Delaware
Paul A. Kaplan, M.D.

Page 71

1    come back.

2    Q.    So, the answer is then that you did experience

3    memory loss during that time period?

4         MR. HOLT:  Objection, mischaracterization.

5    You can answer.

6    A.    You are going to have to more clearly define

7    your question for me, please.

8    Q.    Were there any instances between April of 1997

9    and the end of 1999 when on the job at Blue Cross Blue

10   Shield you experienced memory loss?

11   A.    I don't believe any.

12   Q.    Did you ever discuss with Tim Constantine

13   whether you had any memory loss on the job during that

14   time period?

15   A.    All I can tell you is he was obviously

16   satisfied enough with my work performance that I'm

17   still there.

18   Q.    But that wasn't my question.  My question was

19   did you ever discuss with Tim Constantine whether or

20   not you had memory loss with Blue Cross Blue Shield of

21   Delaware between '97 and '99?

22   A.    I have no idea during those dates or not.

23   Q.    Did you discuss with anyone whether or not you

24   had memory loss at that time?

Electronically signed by Christina Vitale (201-232-221-2474)
Electronically signed by Christina Vitale (201-232-221-2474)          f6080351-44b7-44d2-b6d6-67f2ac405b10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

EDITH CHOMA,               )
                               )
            Plaintiff,      )
                               )
           v.               )   C.A. No. 06-486-JJF
                               )
BLUE CROSS BLUE SHIELD   )   JURY TRIAL DEMANDED
OF DELAWARE,          )
                               )
           Defendant.   )

## ORDER

WHEREAS, Defendant Blue Cross Blue Shield of Delaware, Inc. has filed a

Motion for Protective Order and good cause having been shown:

IT IS HEREBY ORDERED this _____ day of October, 2007, that Defendant's

Motion is GRANTED;  and

Plaintiff is prohibited from discovery of medical information concerning Dr. Paul

Kaplan.

_____

United States District Court Judge

052305.1028