IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EDITH CHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-486-JJF |
| | ) | |
| BLUE CROSS BLUE SHIELD | ) | JURY TRIAL DEMANDED |
| OF DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Edith Choma respectfully requests leave to file a brief sur-reply in response to

Defendant's Reply Brief In Support of Its Motion for Summary Judgment (the "Reply"). This

request is made in order to correct a demonstrable inaccuracy in Defendant's Reply. A copy of

Edith's Proposed Sur-Reply is attached hereto as Exhibit 1.

Wherefore, it is respectfully requested that this Motion for Leave to File A Sur-Reply in

Opposition to Defendant's Motion for Summary Judgment be Granted.

MARGOLIS EDELSTEIN

/s/ *Herbert W. Mondros*

Herbert W. Mondros, Esq. (Del Bar No. 3308)
750 South Madison Street, Suite 102
Wilmington, DE 19801
302.888.1112
Attorneys for Plaintiff

Dated: November 16, 2007

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EDITH CHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-486-JJF |
| | ) | |
| BLUE CROSS BLUE SHIELD | ) | JURY TRIAL DEMANDED |
| OF DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S SUR-REPLY IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Edith Choma respectfully submits this Sur-Reply in response to Defendant's Reply

Brief In Support of Its Motion for Summary Judgment (the "Reply").

In the Reply, Defendant argues that it could not have retaliated against Edith for her

October 22, 2004 discrimination complaint because it was not aware of that complaint until

November 10, 2004, after Edith had worked her last day at BCBSD:

> Plaintiff also asserts that her October 22, 2004 charge of discrimination constituted
> protected activity. Again the timing on this charge dooms her argument. The
> charge was filed with the Delaware Department of Labor on October 24, 2004, but it
> was not received by Defendant *until November 10, 2004* (Exh. 4 Donna May
> Verification). By that time, Plaintiff had already announced her intention to retire
> and had worked her last day on November 2, 2004. Thus, this argument fails as
> well, since Plaintiff cannot prove Defendant took adverse action against her either
> after or contemporaneously with, her protected activity.

[Reply at 16 (emphasis in original) (citation omitted)].  To support this argument, BCBSD

filed the "Sworn Statement of Donna May," which stated that BCBSD's Human Resources

Department did not receive Edith's October 22, 2004 Discrimination Complaint until November 10, 2004, *after* Edith's last day at BCBSD.[1]

Internal documents produced by BCBSD prove, however, that these representations in BCBSD's Reply and May's Sworn Statement are inaccurate, and that BCBSD was well-aware of Edith's October 22, 2004, discrimination complaint at least as early as October 28, 2004, and specifically *before* it put Edith on the unreasonable PIP, unreasonably enforced that PIP, and constructively terminated Edith as alleged.

That proof is contained in an email message from Paul Kaplan to Donna May referencing a meeting between Kaplan, May and Debbie Sweeney in which May briefed Kaplan and Sweeney on the discrimination and harassment allegations against BCBSD:

**May, Donna**

| | |
|---|---|
| **From:** | Kaplan, Paul |
| **Sent:** | Friday, October 29, 2004 4:43 PM |
| **To:** | May, Donna |
| **Subject:** | a discussion you need to be aware of |
| **Importance:** | High |

Donna

Yesterday while you were in my office along with Debbie discussing the allegations that Edith has brought forth against BCBSD. These include

- Harassment &
- Discrimination

I asked you what you meant by discrimination, and you told me that Edith was saying that we were discriminating against her because of her injury, and not making accommodations for her because of the pain in her wrist.

[Complete email is attached as Exhibit B]. Edith's October 22, 2004 Discrimination Complaint is the only discrimination complaint she filed referencing her wrist injury.

This message, appropriately designated by Kaplan as of "high" importance, demonstrates that BCBSD, and specifically Edith's primary tormentors, Kaplan and

---

[1] That page of the Reply, as well as the Verification of Donna May, BCBSD's Human Resources Generalist, are attached hereto as Exhibit A.

Sweeney, not only knew of her October 22, 2004 Discrimination Complaint, but also had collectively discussed that Complaint on October 28, 2004, immediately prior to putting Edith on the PIP on October 29, 2004, enforcing the PIP, and constructively terminating her as alleged in the Complaint and the summary judgment briefs.

Further proof that BCBSD was aware of Edith's October 22, 2004 Complaint long before November 10, 2004 is contained within BCBSD's July 14, 2005 Position Statement sent to the EEOC. In that Position Statement, BCBSD's counsel stated, "[n]or can Ms. Choma rely on her charge filed on October 22, 2004 as the basis for retaliation. Blue Cross did not even receive the charge until October 29, 2004..." [Exhibit C, page 5].

Edith's filing of her Discrimination Complaint on October 22, 2004 was protected activity and the PIP and constructive termination of Edith after that filing were adverse employment actions. At the very least, the date on which BCBSD became aware of that Complaint is a disputed material fact, which precludes summary judgment on BDBSD's behalf. Edith respectfully requests that the Court consider these facts in evaluating the cross-motions for summary judgment.

MARGOLIS EDELSTEIN

/s/ *Herbert W. Mondros*

Herbert W. Mondros, Esq. (Del Bar No. 3308)
750 South Madison Street, Suite 102
Wilmington, DE 19801
302.888.1112
Attorneys for Plaintiff

Dated: November 16, 2007

# EXHIBIT A

Nor does Plaintiff offer any evidence of a pattern of intervening retaliatory animus. On the contrary, the record shows that Plaintiff believed the relationship between she and Kaplan actually improved. Plaintiff stated that after her 1999 complaint she and Kaplan worked more efficiently together. (A179). She admitted she was happy with Kaplan's evaluations of her work in 2000 and 2001. (A178-79). Her duties remained the same with no changes whatsoever to the terms or conditions of her employment. See Krouse v. American Sterilizer Co., 126 F.3d 494, 504 (3d Cir. 1997) (employer's decision to allow plaintiff to work in his original position following his complaint supported finding that there was no intervening retaliatory animus). Plaintiff offers nothing in the record that would support a pattern of retaliatory antagonism.[12]

Plaintiff also asserts that her October 22, 2004 charge of discrimination constituted protected activity. Again, the timing on this charge dooms her argument. The charge was filed with the Delaware Department of Labor on October 22, 2004, but it was not received by Defendant *until November 10, 2004*. (Exh. 4, Donna May Verification). By that time, Plaintiff had already announced her intention to retire and had worked her last day on November 2, 2004. Thus, this argument fails as well, since Plaintiff cannot prove Defendant took adverse action against her either after, or contemporaneously with, her protected activity. Woodson v. Scott Paper, 109 F.3d 913, 920 (3d Cir. 1997).

What is notably absent from Plaintiff's brief is any attempt to causally link her minor workplace gripes to the protected activity. She merely asserts, in conclusory fashion, that the isolated events occurred and thus are evidence of "antagonism and retaliatory animus" without

---

[12] Plaintiff references just two insignificant events that occurred from 1999 – 2002, a memo from Kaplan in 2000 that her performance needed improvement, and an email from Kaplan in May 2002 where he informed that he would have to see how busy they were before she could attend a financial planning seminar. Notably, she provides nothing to suggest that the reasons for these two trivial decisions contained procedural irregularities, inconsistencies, or other evidence of non-temporal retaliatory animus.

16

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EDITH CHOMA, )
)
Plaintiff, )
)
v. )    C.A. No. 06-486-JJF
)
BLUE CROSS BLUE SHIELD )    JURY TRIAL DEMANDED
OF DELAWARE, )
)
Defendant. )

### SWORN STATEMENT OF DONNA MAY

I, Donna May, submit the following sworn statement and state the following:

1. I am employed as a Human Resource Generalist at Blue Cross Blue Shield of Delaware (BCBSD). I was assigned to provide human resources support for the Medical Management Division where Edith Choma was employed. As a Human Resource Generalist, I am familiar with Edith Choma's personnel file and have knowledge of her dates of employment.

2. Ms. Choma officially retired from BCBSD on February 1, 2005 at age 65. Her last day of actually working at BCBSD was on November 2, 2004. On November 3, 2004 she left work on a medical leave of absence.

3. On November 10, 2004, I received on behalf of BCBSD the attached copy of Ms. Choma's charge of discrimination dated October 22, 2004.

I, Donna May, hereby verify under penalty of perjury that the foregoing is true and correct.

DONNA MAY

Executed on November 5, 2007

DB02:6345604.1                                                    000000.0





STATE OF DELAWARE, DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DE 19802
(302) 761-8200/ FAX: (302) 761-6601

## CERTIFIED MAIL - RETURN RECEIPT REQUESTED

October 25, 2004

Personnel Manager
**Blue Cross Blue Shield of Delaware**
1 Brandywine Gateway
Wilmington, DE 19989

RE:    **Choma v. Blue Cross Blue Shield of Delaware, Case No: 04100795/17CA500043**

Dear Respondent:

Enclosed please find a **NOTICE OF CHARGE OF DISCRIMINATION**, along with the following documents:

1.    Verified Charge of Discrimination filed against the above-named Respondent;
2.    Mediation interest form;
3.    Copy of 19 Del. Code § 712 (c), describing the administrative process.

Pursuant to 19 Del. Code § 712 (c), the named Respondent has an opportunity at this time to "file an answer **within twenty (20) days of the receipt of the Charge of Discrimination**, certifying that a copy of the answer was mailed to the Charging Party at the address provided." **If you are interested in mediation, please check the appropriate provisions of the "Invitation to Mediation" form and return with your answer.**

This Charge of Discrimination has been filed under the following law(s), and as indicated by the case numbers referenced above.

☒ Title VII          ☒ DE Discrimination in Employment Act
☐ ADA               ☐ DE Handicapped Persons Employment Protection Act
☐ ADEA

We anticipate your full cooperation. If you intend to retain legal representation at any time throughout this process, please have your attorney enter his or her appearance so that future contact will be made through him or her.

Julie Cutler

Julie Cutler, Supervisor/Administrator,
Office of Labor Law Enforcement

cc:  Charging Party (w/o enclosures)

DOL Form B-10W : 8/04

NOV-06-2007  08:32        BCBSD                                302 421 3216    P.05

| CHARGE OF DISCRIMINATION | ENTER CHARGE NUMBER |
|---|---|
| This form is affected by the Privacy Act of 1974 | ☐ FEPA  04100795<br>☐ EEOC  17CA500043 |
| **Delaware Department of Labor** | and **EEOC** (if applicable) |

| NAME (Indicate Mr., Mrs., Ms)<br>Edith Choma | HOME TELEPHONE NO. (Include Area Code)<br>(302) 998-4050 | |
|---|---|---|
| STREET ADDRESS          CITY, STATE AND ZIP CODE<br>3210 Dunlap Drive   Wilmington DE 19808  NCC | | COUNTY |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME  (If more than one, list below.)

| NAME<br>Blue Cross Blue Shield of Delaware | NO. OF EMPLOYEES OR<br>MEMBERS 50+ | TELEPHONE NUMBER (Incl. Area Code)<br>(302) 421-3000 |
|---|---|---|
| STREET ADDRESS          CITY, STATE AND ZIP CODE<br>One Brandywine Gateway  Wilmington, DE  19989 | | |
| NAME | TELEPHONE NUMBER (Include Area Code) | |
| STREET ADDRESS          CITY, STATE AND ZIP CODE | | |

| ☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE<br><br>☒ RETALIATION    ☐ DISABILITY  ☐ OTHER (Specify) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST  6/15/2004<br>LATEST    10/20/2004<br>☒ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s):

Jurisdiction: Charging Party works for Respondent in Delaware

Charging Party's protected class: Charging Party previously filed a charge of discrimination against Respondent, Disability

Adverse employment action: Harassment, Hostile work environment, Terms & Conditions, Re-assigned in work area

Employment harm: Harassment, Failure to provide accommodations

Applicable law(s): Title VII of the Civil Rights Act, Delaware Discrimination in Employment Action

Respondent's explanation: Not providing an explanation

Comparator(s) or other specific reason(s) for alleging discrimination: Charging party was removed from her assignment and placed in a hostile work environment when she was replaced by a co-worker who is being paid twice as much and is now Charging Party's supervisor, Charging Party's co-workers are not scrutinized and threatened with termination and disciplinary action on a routine basis, Charging Party is routinely harassed when taking one days absence for her disability and instructed to provide medical documentation contrary to company policy which deems three days of absence as the standard to have to provide medical documentation

Additional information and verification of these facts are provided by the attached Affidavit.

| ☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SIGNATURE OF COMPLAINANT<br>*Edith Choma*  10-22-04<br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|

EEOC FORM 5        PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED
REV 6/92

# EXHIBIT B

**May, Donna**

From:     Kaplan, Paul
Sent:     Friday, October 29, 2004 4:43 PM
To:     May, Donna
Subject:     a discussion you need to be aware of
Importance: High

Donna

Yesterday while you were in my office along with Debbie discussing the allegations that Edith has brought forth against BCBSD. These include

- Harassment &
- Discrimination

I asked you what you meant by discrimination, and you told me that Edith was saying that we were discriminating against her because of her injury, and not making accommodations for her because of the pain in her wrist.

I think that it is important that you be aware of a casual conversation that I had with Edith at her desk. It took place within a few days of her returning to work after being out on STD.

I asked her how she was feeling and she told me that her hand and wrist hurt at times. I commiserated with how painful it must be, and then told her to please let Debbie or myself know if she needed anything to help her be more comfortable while at work.

Thanks

Paul

*This communication, including any attachments, is confidential and intended for the sole use of the intended recipient(s). If you received this message in error, please notify the sender immediately and delete all materials received. Thank you*

D00776

CONFIDENTIAL

EXHIBIT C

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BRUCE M. STARGATT
BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DiPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DiLIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS

RICHARD J.A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH
JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
BRENDAN LINEHAN SHANNON
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: (302) 571-6623
DIRECT FAX: (302) 576-3299
sholt@ycst.com

ATHANASIOS E. AGELAKOPOULOS
JOSEPH M. BARRY
SEAN M. BEACH
DONALD J. BOWMAN, JR.
TIMOTHY P. CAIRNS
CURTIS J. CROWTHER
MARGARET M. DiBIANCA
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
DANIELLE GIBBS
ALISON G.M. GOODMAN
SEAN T. GREECHER
KARA S. HAMMOND
DAWN M. JONES
RICHARD S. JULIE
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL

TIMOTHY E. LENGKEEK
MATTHEW B. LUNN
JOSEPH A. MALFITANO
GLENN C. MANDALAS
ADRIA B. MARTINELLI
MICHAEL W. MCDERMOTT
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
JOHN J. PASCHETTO
ADAM W. POFF
SETH J. REIDENBERG
FRANCIS J. SCHANNE
MICHELE SHERRETTA
MICHAEL P. STAFFORD
JOHN E. TRACEY
MARGARET B. WHITEMAN
CHRISTIAN DOUGLAS WRIGHT
SHARON M. ZIEG

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
ELENA C. NORMAN (NY ONLY)
PATRICIA A. WIDDOSS

OF COUNSEL
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

July 14, 2005

Mr. Mark Maddox
U.S. Equal Employment Opportunity Commission
Philadelphia District Office
21 South Fifth Street
The Bourse, Suite 400
Philadelphia, PA 19106-2515

RE:    **Edith Choma v. Blue Cross Blue Shield of Delaware**
        **Case No.: 17CA500043**

Dear Mr. Maddox:

Please accept this letter as Respondent Blue Cross Blue Shield of Delaware's position statement and response to the Request for Information in the above-referenced charge of discrimination.

## BACKGROUND

BCBSD is a nonprofit health care organization servicing the Delaware community. It employs approximately 580 employees. Charging Party Edith Choma was employed as an Administrative Assistant II in BCBSD's Quality Improvement Department. Her duties included handling phone calls, preparing correspondence, and other administrative functions. The position required her to regularly key and type, including "the ability to type accurately." *See* Job Description, Tab 1.

Ms. Choma reported directly to her supervisor, Deborah Sweeney, from 2002 until her retirement in February 2005. During most of this time period, including the period after Ms. Choma filed her first charge of discrimination in November 2002, she and Ms. Sweeney had a positive working relationship. For instance, in Ms. Choma's 2003 annual performance review,

                    D00389

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Mr. Mark Maddox
July 14, 2005
Page 2

Ms. Sweeney gave Ms. Choma an overall rating of "meets expectations" and stated that Choma "completes assigned tasks with minimal supervision." *See* 2003 Review, dated 1/27/04, Tab 2. Ms. Sweeney also commented that Ms. Choma had improved her adherence to company policy regarding lunch times which had been a problem in the past. *Id.*

As for goals, one area that Ms. Sweeney wanted Ms. Choma to become proficient in was the preparation of claim denial and approval letters. *See* Tab 2, p. 9. At that time, all denial and approval letters were prepared by the other administrative assistant, Patricia Carpenter, who, in addition to these responsibilities, supported more employees than Ms. Choma. Ms. Sweeney informed Ms. Choma that she would need to cover the claim letter responsibilities when Ms. Carpenter was on vacation and as a result "will need to focus on time management and organization in order to compete tasks in a accurate manner." *See* Tab 2, p. 9. In July 2004, Ms. Carpenter went on vacation and as planned Ms. Choma was assigned to handle the claim letters during her absence.

The process for completing the claim approval and denial letters is fairly straightforward. First, a Blue Cross doctor, nurse or outpatient referral representative uses a template to indicate the reasons for approval/denial and provides an address, account number and the type of service or treatment that was approved or denied. The template is then placed in a bin which the administrative assistant collects at the end of the day. The administrative assistant will then take the template to generate a form letter using the information provided by the doctor or nurse. After the letter is typed, it is sent to a manager who reviews the letter. If the letter is acceptable, it is mailed. If there are typing errors, it is sent back to the administrative assistant for corrections. The corrected letter is then sent to Ms. Sweeney who will review it for accuracy before it is mailed.

The denial letters for Blue Cross claims must be prepared in a prompt fashion. Under the U.S. Department of Labor guidelines, denial letters must be mailed within a certain timeframe after the denial of the claim or the insurer could face stiff penalties.

When Ms. Choma assumed the claim letter responsibilities during Ms. Carpenter's absence, Ms. Sweeney spoke with her on several occasions to see how the letters were coming along and if she was having any problems. Ms. Choma repeatedly stated that everything was fine. However, when Ms. Carpenter returned from vacation, she discovered that Ms. Choma had problems getting letters typed in a timely fashion and many of the letters had multiple errors. Ms. Carpenter spent a substantial amount of time correcting Ms. Choma's errors and eliminating the backlog of letters.

To prevent this problem from occuring in the future, Ms. Sweeney determined that Blue Cross needed more than one person proficient at preparing claim letters, and assigned Ms. Choma to permanently assist Ms. Carpenter with this function. Given Ms. Choma's initial difficulties, she was assigned to handle the claim letters prepared by Blue Cross nurses because there were fewer of them and the nurses tended to provide clearer and more complete documentation.

2

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Mr. Mark Maddox
July 14, 2005
Page 3

In late August 2004, Ms. Choma broke her wrist in an accident outside of work and subsequently applied for and went out on short-term disability leave. An employee from a temporary agency filled in while Ms. Choma was absent and was able to address the backlog and complete the letters in a satisfactory manner. When Ms. Choma returned to work on September 20, she had several work restrictions, but she had no restrictions on her ability to type, so she returned to doing letters. She also took time off during the day to attend physical therapy sessions for her hand, but was required under Blue Cross policy to provide advance notice of the sessions. *See* Blue Cross Policies on PTO, Tab 3.

Despite the lack of restrictions on Ms. Choma's ability to type, Ms. Sweeney repeatedly observed that Ms. Choma was taking an unreasonable amount of time to complete the letters, which resulted in a backlog, and many of the letters that were completed had numerous typing errors. In some cases, Ms. Choma simply chose not to pick up the letters from the collection bin at the end of the day. Ms. Sweeney counseled Ms. Choma on this issue, and over the course of the next two months met with her in an attempt to improve her performance. To track Ms. Choma's progress, Ms. Sweeney asked Ms. Choma to record the start and end times on each folder containing claim letters.

Unfortunately, the counseling did little to improve Ms. Choma's performance. Ms. Choma was completing an average of 16 letters per day with an accuracy rate of only 74%. This was half the average letters completed by others with more than double the errors.

On October 27, 2004, Ms. Choma made a complaint to the Human Resources department alleging that Ms. Sweeney did not understand the pain in her hand and was harassing her to get the claim letters completed. *See* complaint form completed by Choma, dated 10/27/04, Tab 4. Blue Cross investigated Ms. Choma's complaint, and interviewed Ms. Sweeney about the allegations. *See* statement by Ms. Sweeney, Tab 5. Based on the information obtained in the investigation, there was no evidence that Ms. Sweeney was doing anything other than asking Ms. Choma to do her job. This finding was conveyed to Ms. Choma at a meeting on October 28, 2004. *See* Tab 6.

Following the meeting, Ms. Choma took a leave of absence under Blue Cross's short term disability policy. She had several communications with Blue Cross about retirement, but only on the condition that she receive her incentive pay for the following year. Ms. Choma never returned to work and instead opted to retire at the age of 65 in February 2005.

<u>THE LEGAL STANDARD</u>

Ms. Choma alleges that she was subjected to harassment by her supervisor, Ms. Sweeney, in retaliation for filing a charge of discrimination, and because she was disabled. She also claims that she was forced to retire, or constructively discharged, because of the harassment.

The elements of a hostile work environment claim brought under a discrimination statute such as the ADA are well established. A plaintiff seeking to hold her employer liable must

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Mr. Mark Maddox
July 14, 2005
Page 4

prove, as relevant here: (1) that she suffered intentional discrimination because of her disability;
(2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally
affected the plaintiff; (4) that the discrimination would have detrimentally affected a reasonable
person of the same disability as the plaintiff, in like position; and (5) a basis for respondeat
superior liability. *See Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999). The
Supreme Court has made clear that "simple teasing, offhand comments, and isolated incidents
(unless extremely serious)" are not actionable. *Faragher v. City of Boca Raton*, 524 U.S. 775,
788, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998) (internal citation omitted). Instead, the harassing
behavior must be "sufficiently severe or pervasive to alter the conditions of [plaintiff's]
employment." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 159 L. Ed. 2d 204, 124 S. Ct.
2342, 2347 (2004)

Ms. Choma further alleges that she was retaliated against in violation of the ADA. To
establish a prima facie case of retaliation, an employee must demonstrate that (1) she engaged in
a protected activity; (2) the employer took an adverse employment action against her, and (3)
there was a causal connection between her participation in the protected activity and the adverse
employment action. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. 1997).

If the employee is able to establish a prima facie case of retaliation, the burden shifts to
the employer to articulate a legitimate business reason for the alleged action. *See, e.g., Texas
Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The courts have
acknowledged they will not substitute their judgment for that of the employer when business
decisions are made with regard to operations and financial issues. *See Kelly v. Drexel Univ.*, 94
F.3d 102, 109 (3d Cir. 1996). Assuming the employer articulates a legitimate business reason,
the burden shifts back to the employee to prove by a preponderance of the evidence that the
legitimate reason offered by the employer was not the true reason, but rather a pretext for
retaliation. *Burdine*, 450 U.S. at 254.

Ms. Choma's final claim is that she was forced to resign. Constructive discharge of an
employee occurs when an employer, rather than directly discharging an individual, intentionally
creates an intolerable work atmosphere that forces an employee to quit involuntarily. As
recognized by the United States Supreme Court, a constructive discharge claim based on an
allegedly hostile work environment requires more than just simple harassment: a plaintiff who
advances such a compound claim must show working conditions so intolerable that a reasonable
person would have felt compelled to resign. *Suders*, 159 L. Ed. 2d 204. This is because "unless
conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain
on the job while seeking redress." *Suders*, at 2354 (internal quotation omitted).

RESPONSE TO ALLEGATIONS

Retaliation Claim

Respondent denies that Ms. Sweeney retaliated against Ms. Choma for filing a charge of
discrimination. Ms. Sweeney stated that she was only attempting to get Ms. Choma to perform

4

D00392

CONFIDENTIAL

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Mr. Mark Maddox
July 14, 2005
Page 5

her job and complete her assigned functions. See Tab 5. This constitutes a legitimate business reason for Ms. Sweeney's actions, and there is nothing to indicate it was a pretext for retaliation. Yet Ms. Choma's allegations, even if true, do not establish a prima facie case of retaliation.

Ms. Choma had no complaints about Ms. Sweeney for more than 18 months after she filed her first charge of discrimination. This significant period of time establishes there was no connection between the filing of the charge and the alleged adverse actions. *Robinson*, 120 F.3d at 1299; *see e.g.*, *Weston v. Pa.*, 251 F.3d 420, 430 (3d Cir. 2001) (finding employee's suspensions which occurred more than a year after protected activity does not establish causation); *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir. 2001) ("the seven-month time lapse between the protected activity and the alleged retaliatory act is, without more, too long for the incidents to be temporally--and therefore causally--related."); *Feltmann v. Sieben*, 108 F.3d 970, 977 (8th Cir. 1997)(finding no temporal proximity where plaintiff was fired six months after the complaint and, therefore, insufficient to show causal link).



Nor can Ms. Choma rely on her charge filed on October 22, 2004 as the basis for retaliation. Blue Cross did not even receive the charge until October 29, 2004 which is after the time period when Ms. Choma alleges she was retaliated. The simple fact is there is no correlation between Ms. Choma's complaints and the alleged adverse action.

Finally, none of the unpleasantries Ms. Choma alleges she endured rise to the level of an adverse employment action. It is well settled that to make a prima facie showing of retaliation a charging party must show not just any adverse employment action, but rather, a materially adverse employment action. That is, the "retaliatory conduct must be serious enough to alter an employee's compensation, terms, conditions, or privileges of employment," deprive him or her of "employment opportunities," or "adversely affects his [or her] status as an employee." *Robinson*, 120 F.3d at 1300.

In the instant case, Ms. Choma claims that Ms. Sweeney followed her around the office, limited her use of lunch periods for make up time, and insisted she type more efficiently. None of these qualify as materially adverse employment actions. There is no allegation that Ms. Choma was demoted, suffered a decrease in pay, or denied employment opportunities. *Robinson*, 120 F.3d at 1300 ("not everything that makes an employee unhappy qualifies as retaliation, for otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit."). As a result, the retaliation claim fails as a matter of law.

Harassment

Ms. Choma's claim of harassment is similarly groundless and her story is replete with exaggerations. For instance, she makes the incredulous statement that Ms. Sweeney would come by her desk "every 5 or 10 minutes (and I mean every 5 or 10 minutes)" to check on her work. Not only would this be a practical impossibility, but it is refuted by Ms. Sweeney's statement that she checked on the status of the letters a mere 2 or 3 times a day. It goes without saying that

CONFIDENTIAL

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Mr. Mark Maddox
July 14, 2005
Page 6

an employer's efforts to improve the performance of an employee does not constitute unlawful harassment, nor would this type of conduct be considered sufficiently severe or pervasive to alter the conditions of Ms. Choma's employment.

There is also no evidence that Ms. Sweeney made unfair demands of Ms. Choma. Indeed, when Ms. Choma was absent on disability leave, a temporary employee assigned to her position was able to satisfactorily perform her duties, including typing the claim letters. Accordingly, even if Ms. Choma subjectively felt as if she was being harassed, a reasonable person in the like position would not. She cannot establish the elements of a claim for harassment.

Constructive Discharge

Ms. Choma's final claim is that she was forced to retire at the age of 65 as a result of the harassment. Again, this claim falls by the wayside when it is revealed that her harassment allegations are nothing more than a series of trivial slights and exaggerations. Simply stated, Ms. Choma has not shown that her working conditions were so intolerable that a reasonable person would have had no choice but to resign.

It is important to note that when Ms. Choma complained to the Human Resources department, Blue Cross immediately investigated her claim. The investigator interviewed both Ms. Choma and Ms. Sweeney and concluded that the allegations were unfounded. *See* Tab 6. At that point, Ms. Choma was free to return to her position. However, she chose to resign (on the condition that she receive her incentive pay), rather than remain on the job while seeking redress. As a result, she forfeited any right to make a constructive discharge claim. *See Suders*, at 2354.

For the foregoing reasons, Respondent respectfully requests that the charge of discrimination be dismissed. Please feel free to contact me if you need additional information.

Very truly yours,

Scott A. Holt

SAH:sde
Attachments
cc:    William E. Kirk III, Esquire (w/attachments)
       Susan T. Slaysman (w/attachments)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

EDITH CHOMA,                         )
                                     )
                Plaintiff,           )
                                     )
        v.                           )  C.A. No. 06-486-JJF
                                     )
BLUE CROSS BLUE SHIELD               )  JURY TRIAL DEMANDED
OF DELAWARE,                         )
                                     )
                Defendant.           )


**ORDER GRANTING PLAINTIFF'S MOTION
FOR LEAVE TO FILE A SUR-REPLY IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**


        Upon Plaintiff's Motion for Leave to File a Sur-Reply in Opposition to Defendant's Motion

for Summary Judgment (the "Motion"), the Court having considered the Motion, and it appearing

that sufficient cause exists for granting the relief requested therein,

        IT IS HEREBY ORDERED that the Motion is GRANTED.



                                    _____
                                    The Honorable Joseph J. Farnan, Jr.
                                    United States District Court Judge


Dated: _____, 2007