IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EDITH CHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-486-JJF |
| | ) | |
| BLUE CROSS BLUE SHIELD | ) | JURY TRIAL DEMANDED |
| OF DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
HER MOTION FOR LEAVE TO FILE A SUR-REPLY
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Edith Choma files this Reply Brief in Support Of Her Motion For Leave to File a Sur-Reply In Opposition to Defendant's Motion for Summary Judgment (the "Motion").

Edith's Motion was neither a "thinly veiled' conspiracy to "have the last word" nor an effort to "compensate for 'problems in her case' or 'deficiencies in her Answering Brief.'" [*See* Defendant's Opposition Memorandum ("Opp. Mem.") at 1]. Rather, the Motion was an effort to bring an inaccurate representation made by BCBSD in its Reply Brief to the attention of the Court.

Simply put, BCBSD stated in its Reply Brief and in the "Sworn Statement of [HR Generalist] Donna May" that it could not have retaliated against Edith for her October 22, 2004 DDOL and EEOC complaints, because it was not even aware of those complaints until November 10, 2004, *after* it took the allegedly retaliatory actions of placing Edith on the October 29, 2004 PIP, unreasonably enforcing the PIP and constructively terminating Edith.

The October 28, 2004 email message from Paul Kaplan to Donna May and Debbie Sweeney indicates – to the contrary - that BCBSD was aware of Edith's October 22, 2004 DDOL and EEOC Complaints at least as early as October 28, 2004, when Kaplan, May and Sweeney met and "discussed the allegations Edith has brought forth against BCBSD." This evidence, if it does not *prove* that BCBSD was well-aware of Edith's October 22, 2004, discrimination complaint before it retaliated against Edith, certainly creates a dispute over a material fact at issue in this case.

BCBSD opposes Edith's effort to correct the record with the same degree of effort and determination with which it disseminates Denial and Appeal Letters to its insureds, (as demonstrated by the evidence). For the reasons that follow, Edith respectfully requests that her Motion for Leave to file a Sur-Reply be granted.

A.    Any Violation of the Local Rules Did Not Prejudice BCBSD, and Should Not Provide A Basis for BCBSD To Perpetuate Its Inaccurate Version of Events.

BCBSD suggests that this Court should not consider the evidence demonstrating that BCBSD made an inaccurate representation in its brief because Edith's Motion violated the local rules.

Edith, through her counsel, filed a one-page Motion, and included the proposed Sur-Reply as an exhibit in order to bring context to the Motion and as an accommodation to the Court and to BCBSD. Plaintiff, who did seek the Court's approval to file the Sur-Reply, regrets if this effort transgressed Local Rule 7.1.2(c). If the Court deems it necessary, Plaintiff will re-file her one-page Motion without the three-page Sur-Reply.

Importantly, BCBSD does not, and cannot claim it is prejudiced by the manner in which Edith's Sur-Reply was filed. To the contrary, BCBSD has opportunistically used

Plaintiff's filing to further argue its case to the Court in its six-page opposition. [*See, e.g.,* Opp. Mem. at 4-5].

This Court has permitted sur-replies not filed in strict compliance with the Local Rules. In *Benitec Austl. Ltd. v. Nucleonics, Inc.*, 2005 U.S. Dist. LEXIS 22008 (D. Del. 2005), for example, the defendant filed a "Motion To File A Surreply," and attached, as Exhibit A to that motion, the proposed sur-reply. This Court granted the motion, and deemed the sur-reply filed. Id. at * 1, n.1 (*see* also *Benitec* Docket on Delaware Pacer, DE 118); *Brown v. Williams*, 2001 U.S. Dist. LEXIS 25550 (D. Del. 2001)(considering sur-reply "although not in conformity with the District's Local Rules").[1]

In all events, any non-prejudicial transgression of the Local Rule should not have the consequence of permitting BCBSD to perpetuate its inaccurate and misleading version of exactly when BCBSD became aware of Edith's October 22, 2004 EEOC and DDOL filings. Edith, once again, respectfully requests leave to file her Sur-Reply.

    B.    The Sur-Reply Would Not Raise a New Argument, But It Would Expose an Inaccurate Statement or Factual Misrepresentation in BCBSD's Papers.

BCBSD next claims that leave to file the Sur-Reply should be denied because it raises a new argument. [See Opp. Mem. at 4 ("for the first time Plaintiff argues that this [10/27/04 email constitutes a *fourth* separate occasion of protected activity…")].

This is incorrect. Edith's October 27th email is not even mentioned in the Motion for Leave or in the Sur-Reply, neither of which can reasonably be read to argue that the October 27 email was protected activity. This is a classic Straw Man argument, pure and simple,

---

[1] The District Court in Washington D.C., has permitted a party to file a non-local rule compliant sur-reply in order to correct inaccuracies and misleading statements made in reply briefs. *See 1015 Half St. Corp. v. Warehouse Concepts, Inc.*, 1999 U.S. Dist. LEXIS 19135 at * 1, n.1 (D.D.C. 1999).

designed to deflect attention from the inaccurate statements BCBSD made in its Reply Brief and in the "Sworn Statement" of its Human Resources Generalist, Donna May.

Far from raising a new argument, Edith's Sur-Reply simply seeks to refute BCBSD's claim that it could not have retaliated against Edith for her October 22, 2004 complaints to the DDOL and EEOC because it was not aware of those complaints when it engaged in the activity alleged to have been retaliatory. The Sur-Reply would show the Court that BCBSD's claim, made in its Reply Brief and in the Sworn Statement of Donna May, that it was unaware of Edith's October 22, 2004 EEOC/DDOL complaints until November 10, 2004, is specious.

Kaplan's October 29th email proves that Kaplan, May and Sweeney all met on October 28, 2004, and "discussed the allegations Edith has brought forth against BCBSD" *prior to* the alleged retaliation between October 29 and November 10, 2004.

In an effort to convince the Court that Kaplan's October 29, 2004 email does not relate to Edith's October 22, 2004 EEOC/DDOL Complaints, BCBSD argues that Kaplan's October 29 email "makes no reference to Plaintiff's October 22, 2004 charge of discrimination" and "*appears* to relate to Plaintiff's email made on October 27, 2004...." [Opp. Mem. at 5 (emphasis added)].

It is worth noting in response that Kaplan's October 29 email makes no reference to Edith's October 27 email, and moreover, Kaplan's reference to "*allegations* that Edith had made against BCBSD.... [including] Harassment & Discrimination," [*id.* (emphasis added)], clearly suggests that Kaplan was referring to *charges* like the ones made in the October 22, 2004 Complaints, which specifically referenced "harassment and discrimination," rather than the one-liner in Edith's October 27, 2004 email, "I feel I am

being harassed and have no other option but to retire." [Compare Kaplan's October 29 email with Edith's October 22 Complaint and her October 27 email, Exhibits A, B and C, respectively].

Exactly what Kaplan meant and when BCBSD became aware that Edith had engaged in protected activity must be determined by a jury, through the lens of the witnesses' credibility, including Kaplan's memory issues, and the inconsistent statements in Donna May's "Sworn Statement" as compared with the Kaplan email and BCBSD's "Position Statement." This is the very definition of a material, disputed fact precluding summary judgment on behalf of BCBSD.

C.    The Motion is Not Moot

BCBSD's final argument is that the "Motion should be denied ... because it would not alter the ultimate ruling on her retaliation claim." [Opp. Mem. at 5]. Tautology follows close on the straw man's heels!

The evidence will show that Paul Kaplan, the memory-impaired, disabled physician turned Chief Medical Officer for BCBSD, likened Edith to a dog, among other things, and told his colleagues that he wanted to get rid of Edith because she could not hear, and then Kaplan and BCBSD embarked on a campaign to harass and discriminate against Edith until she was forced to retire. BCBSD's contention that Edith was secretly aware of the PIP, and preemptively filed her EEOC and DDOL complaints, is a hotly disputed material fact. Whether BCBSD's theory is correct or whether BCBSD put Edith on the unreasonable PIP and forced her to retire in retaliation for the EEOC and DDOL complaints she filed a week earlier is a determination that can only be made by a jury. These are disputed material facts, and cannot be decided, at least in BCBSD's favor, on summary judgment.

**Conclusion**

For the foregoing reasons, Edith respectfully requests that the Court grant her Motion for Leave to File A Sur-Reply and consider the facts in the Sur-Reply in evaluating the cross-motions for summary judgment.

MARGOLIS EDELSTEIN

/s/ *Herbert W. Mondros*

Herbert W. Mondros, Esq. (Del Bar No. 3308)
750 South Madison Street, Suite 102
Wilmington, DE 19801
302.888.1112
Attorneys for Plaintiff

Dated: December 4, 2007

# EXHIBIT A

## May, Donna

| | |
|---|---|
| **From:** | Kaplan, Paul |
| **Sent:** | Friday, October 29, 2004 4:43 PM |
| **To:** | May, Donna |
| **Subject:** | a discussion you need to be aware of |
| **Importance:** | High |

Donna

Yesterday while you were in my office along with Debbie discussing the allegations that Edith has brought forth against BCBSD. These include

- Harassment &
- Discrimination

I asked you what you meant by discrimination, and you told me that Edith was saying that we were discriminating against her because of her injury, and not making accommodations for her because of the pain in her wrist.

I think that it is important that you be aware of a casual conversation that I had with Edith at her desk. It took place within a few days of her returning to work after being out on STD.

I asked her how she was feeling and she told me that her hand and wrist hurt at times. I commiserated with how painful it must be, and then told her to please let Debbie or myself know if she needed anything to help her be more comfortable while at work.

Thanks

Paul

*This communication, including any attachments, is confidential and intended for the sole use of the intended recipient(s). If you received this message in error, please notify the sender immediately and delete all materials received. Thank you*

CONFIDENTIAL

D00776

# EXHIBIT B

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974

**Delaware Department of Labor**

ENTER ( ) E NUMBER

☐ FEPA   04100795
☐ EEOC   17CA500043

and EEOC (if applicable)

| NAME (Indicate Mr., Mrs., Ms) | HOME TELEPHONE NO. (Include Area Code) |
|---|---|
| .th Choma | (302) 998-4050 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 3210 Dunlap Drive  Wilmington DE 19808   NCC | | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one, list below.)*

| NAME | NO. OF EMPLOYEES OR MEMBERS 50+ | TELEPHONE NUMBER (Incl. Area Code) |
|---|---|---|
| Blue Cross Blue Shield of Delaware | | (302) 421-3000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| One Brandywine Gateway  Wilmington, DE  19989 | |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| | |

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE
☒ RETALIATION ☐ DISABILITY ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST    6/15/2004
LATEST      10/20/2004
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s):

Jurisdiction:  Charging Party works for Respondent in Delaware

Charging Party's protected class:  Charging Party previously  filed a charge of discrimination against Respondent, Disability

Adverse employment action:  Harassment, Hostile work environment, Terms & Conditions, Re-assigned in work area

Employment harm:  Harassment, Failure to provide accommodations

Applicable law(s):  Title VII of the Civil Rights Act, Delaware Discrimination in Employment Action

Respondent's explanation:  Not providing an explanation

Comparator(s) or other specific reason(s) for alleging discrimination:  Charging party was removed from her assignment and placed in a hostile work environment when she was replaced by a co-worker who is being paid twice as much and is now Charging Party's supervisor, Charging Party's co-workers are not scrutinized and threatened with termination and disiciplinary action on a routine basis, Charging Party is routinely harassed when taking one days absence for her disability and instructed to provide medical documentation contrary to company policy which deems three days of absence as the standard to have to provide medical documentation

Additional information and verification of these facts are provided by the attached Affidavit.

| ☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SIGNATURE OF COMPLAINANT   *Edith Choma*  10-22-04 |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

EOC FORM 5
REV 6/92

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED



DEPOSITION
EXHIBIT
PENGAD 800-631-6989
CHOMA-45
C MV-6/14/07

# EXHIBIT C

**May, Donna**

From:    Slaysman, Susan
Sent:    Wednesday, October 27, 2004 11:26 AM
To:      Choma, Edith
Cc:      May, Donna
Subject: RE:

If you plan to retire on January 3, I would strongly suggest that if you have not already done so you contact Jennifer Wildesen in Corporate Benefits at 410-998-5642 as soon as possible. There is a four to six week processing period before this can be effective. There are usually a lot of decisions that need to be made during this period so if Donna or I can be of any help let us know.

However, I am concerned about your statement that you feel you are being harassed and that that has prompted your decision to retire. I am asking Donna May to contact you today to look into this.

The above information is confidential and is intended for the recipient. If you have received this message in error, please notify me immediately at 302-421-3192 and delete the materials received. Thank you.

    -----Original Message-----
    **From:** Choma, Edith
    **Sent:** Wednesday, October 27, 2004 9:45 AM
    **To:** Slaysman, Susan
    **Subject:**

    I am retiring on January 3rd. I understand that if you work on January 3rd you will receive your incentive for the year.

    I feel I am being harassed and have no other option but to retire.

This communication, including any attachments, is confidential and intended for the sole use of the intended recipient(s). If you received this message in error, please notify the sender immediately and delete all materials received. Thank you.

10/27/2004

D00753

# TAB 1

49 of 69 DOCUMENTS

**1015 HALF STREET CORPORATION, Plaintiff, v. WAREHOUSE CONCEPTS, INC., Defendant.**

**Civil Action No. 99-1174 SSH**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*1999 U.S. Dist. LEXIS 19135*

**October 26, 1999, Decided
October 26, 1999, Filed**

**DISPOSITION:** [*1] Plaintiff's motion to remand denied.

**COUNSEL:** FOR PLAINTIFF(S): James F. Lee, Jr., Esq., James P. Bobotek, Esq., Washington, DC.

FOR DEFENDANT(S): Charles M. Asmar, Esq., Eric J. Darden, Esq., McManus, Schor, Asmar & Darden, Washington, DC.

**JUDGES:** Stanley S. Harris, United States District Judge.

**OPINION BY:** Stanley S. Harris

**OPINION**

*MEMORANDUM ORDER*

Before the Court is plaintiff's motion to remand, defendant's opposition thereto, and plaintiff's reply. Also before the Court is defendant's "praecipe." [1] Upon consideration of these submissions, as well as the entire record herein, plaintiff's motion is denied. [2]

> 1 Defendant filed what it labeled a "praecipe," informing the Court of several inaccuracies in plaintiff's reply brief. The Court considers defendant's submission to be a surreply, rather than a praecipe. *See Black's Law Dictionary* 1055-56 (5th ed. 1979) (defining "praecipe" as, *inter alia*, "an order, written out and signed, addressed to the clerk of a court, and requesting him to issue a particular writ"). Because defendant's surreply points out several glaring inaccuracies and highly misleading statements in plaintiff's reply, the Court accepts the submission. However, the Court notes that, in the future, defendant must

first obtain leave of Court before filing a surreply. *See* Local Rule 108 (providing for only a memorandum in support of a motion, a memorandum in opposition, and a reply memorandum).

[*2]

> 2 Defendant requests that the Court dismiss the motion because plaintiff did not confer with defendant before filing it, as required by Local Rule 108(m). Plaintiff claims that it had no duty to confer with defendant under Rule 108(m), as a motion to remand is a dispositive motion. The majority view is that a motion to remand is a non-dispositive motion. *See, e.g., Young v. James, 168 F.R.D. 24 (E.D. Va. 1996)*. In the absence of binding precedent to the contrary, the Court will consider the motion despite the non-compliance with Rule 108(m).

**BACKGROUND**

On March 26, 1999, plaintiff 1015 Half Street Corporation ("Half Street") commenced an action against defendant Warehouse Concepts, Inc. ("WCI") in the Superior Court of the District of Columbia. Half Street, a District of Columbia corporation with its principal place of business in the District of Columbia, asserted breach of contract and negligence counts against WCI, a Maryland corporation with its principal place of business in Maryland. Because WCI had not appointed a registered agent in the District of Columbia, Half [*3] Street served the complaint and summons on Mayor Williams's office on May 29, 1999. *See* D.C. Code § 29-312(b) (designating the Mayor as an agent who may receive service of process for corporations that have not appointed a registered agent in the District of Columbia). Half Street also attempted to serve WCI's resident agent in Maryland, but that attempt failed. [3] Although Half Street knew WCI's business address and the names of its corporate officers, it made no attempt to mail a copy to

Case 1:06-cv-00486-JJF     Document 76-5     Filed 12/04/2007     Page 3 of 16

Page 2
1999 U.S. Dist. LEXIS 19135, *

that address or to serve the complaint and summons on WCI's officers. Similarly, although Half Street knew the name of the attorney representing WCI in this matter, it did not provide that attorney with a courtesy copy of the complaint nor ask whether counsel would accept service. Half Street served Mayor Williams's office on March 29, 1999. The District of Columbia did not mail a copy of the complaint and summons to WCI until May 14, 1999. The first date on which WCI actually received a copy of the complaint was April 15, 1999, when Half Street's attorney sent a facsimile copy of it to WCI's attorney. WCI filed a notice of removal pursuant to *28 U.S.C. § 1441(b)* on May 14, 1999. Half [*4] Street filed its motion to remand this action to the Superior Court for the District of Columbia on June 16, 1999.

> 3  Half Street mailed a copy of the complaint and summons, via certified mail, return receipt requested, to the address for WCI's resident agent in Maryland provided by the Maryland State Department of Assessments and Taxation. The package was returned by the Postal Service as unclaimed.

## ANALYSIS

Plaintiff moves to remand this action pursuant *28 U.S.C. § 1447(c)*, claiming that defendant's notice of removal was untimely. Defendant opposes remand and claims that its notice of removal was timely. Title *28 U.S.C. § 1446(b)* provides that a notice of removal is timely if it is filed within 30 days "after receipt by the defendant, through service or otherwise" of a copy of the complaint. The parties disagree on when the thirty-day time period for removal began to run in this case. Plaintiff argues that the time for removal began to run on the date Half [*5] Street served Mayor Williams's office and therefore that defendant's notice of removal was untimely. Defendant argues that the time for removal did not begin to run until the date it actually received a copy of the complaint and therefore that its notice of removal was timely.

Plaintiff essentially makes two arguments in support of its claim that defendant's time to seek removal began to run from March 29, 1999, the date of service on the Mayor. Plaintiff first argues that WCI's failure to comply with D.C. Code § 29-399(e)(1) and appoint a registered agent for service of process in the District of Columbia constituted a voluntary appointment of Mayor Williams as their registered agent. Thus, the date of service on the Mayor, as WCI's "appointed" agent, marked the start of defendant's time to remove the action. Plaintiff adds that it would be inequitable for WCI to benefit from its failure to comply with D.C. law. Plaintiff's second argument is that, even if Mayor Williams is considered only WCI's

statutory agent, rather than its actual agent, a statutory agent, rather than its actual agent, a statutory agent's receipt of process starts the thirty-day removal period. In response, [*6] defendant argues that Mayor Williams was merely its statutory agent and that, when service is effected on a statutory agent, the time for removal does not begin to run until the defendant actually has received a copy of the complaint. Thus, its time for removal did not begin to run until April 15, 1999, when its attorney received a copy of the complaint by facsimile.

Almost every court that has recently addressed the issue has held that when service is effected on a statutory agent, rather than on an agent appointed by the defendant, the time to remove the action to federal court does not start to run until the defendant actually has received a copy of the complaint. [1] *See Monterey Mushrooms, Inc. v. Hall, 14 F. Supp. 2d 988, 991 (S.D. Tex. 1998)* (holding that, where service was properly made on a statutory agent, the removal period began when defendant actually received the process, not when the statutory agent received it); *Wilbert v. Unum Life Ins. Co., 981 F. Supp. 61, 63 (D.R.I. 1997)* ("When a statutory agent is served, the clock for removal does not begin ticking as it would if defendant itself had been served but rather starts when defendant [*7] receives actual notice of the service from the statutory agent."); *Pilot Trading Co. v. Hartford Ins. Group, 946 F. Supp. 834, 839 (D. Nev. 1996)* (holding that, where service is effected through a statutory agent, the time for removal starts running at the time of defendant's actual receipt of the complaint); *Medina v. Wal-Mart Stores, Inc., 945 F. Supp. 519, 520 (W.D.N.Y. 1996)* (noting that "'the time for removal, in cases in which service is made on a statutory agent, runs from receipt of the pleading by the defendant rather than the statutory agent.'") (quoting *Cygielman v. Cunard Line, Ltd., 890 F. Supp. 305, 307 (S.D.N.Y. 1995)*); *Taphouse v. Home Ins. Co., 885 F. Supp. 158, 161 (E.D. Mich. 1995)* (holding that the time limit for removal does not begin with service on a statutory agent, but when the defendant actually receives the pleading); *Skidaway Assocs., Ltd. v. Glens Falls Ins. Co., 738 F. Supp. 980, 982 (D.S.C. 1990)* ("The law appears to be settled that service on a statutory agent . . . does not start the running of the removal statute time limitation period as would service on the defendant [*8] or an agent designated by the defendant."). Plaintiff cites only one decision issued within the last four decades that supports its argument that service on a statutory agent starts the thirty-day period for removal, even when the defendant has not yet actually received a copy of the complaint. [5] *See Bodden v. Union Oil Co., 82 F. Supp. 2d 584, 1998 U.S. Dist. LEXIS 2117, 1998 WL 88048, *3 (E.D. La.). But see Fidelity Funding, Inc. v. Pollution Research & Control Corp., 1999 U.S. Dist. LEXIS 215, 1999 WL 20055, *2 (N.D. Tex.)* (disagreeing with *Bodden* and noting that it is con-

1999 U.S. Dist. LEXIS 19135, *

trary to the great weight of authority). The Court is persuaded by the reasoning in the cases following the majority view and finds that, where service of process is effected on a statutory agent, the time for removal does not begin to run until the defendant has actually received a copy of the process. Accordingly, if Mayor Williams is considered to be WCI's statutory agent, defendant's notice of removal was timely.

> 4  A few courts have taken a somewhat different approach, holding that the time for removal begins on the date the statutory agent mails the complaint to the defendant. *See, e.g., Masters v. Nationwide Mutual Fire Ins. Co., 858 F. Supp. 1184, 1186 (M.D. Fla. 1994).*

[*9]

> 5  Plaintiff cites two other decisions issued after the 1950s in support of this proposition; however, those cases do not support plaintiff's argument.

Plaintiff claims that Mayor Williams was not merely a statutory agent in this case, but WCI's actual agent. Section 29-399(e)(1) of the D.C. Code requires that a foreign corporation transacting business in the District of Columbia appoint and maintain a registered agent for service of process in the District, as well as register the name and address of this agent and the address of its principal office with the Mayor. Section 29-312(b) states that when a corporation fails to appoint a registered agent in the District, the Mayor shall be an agent of the corporation upon whom process may be served. *See also* D.C. Code § 29-399(e)(2). As discussed above, plaintiff claims that, by failing to appoint a registered agent in the District of Columbia as required by the D.C. Code, WCI voluntarily "chose" the Mayor as its agent to receive service of process. The Court disagrees with plaintiff's argument that WCI's inaction constituted a "choice" of Mayor [*10]  Williams as their actual agent. At no point did WCI affirmatively appoint the Mayor to be its designated agent. Rather, the agency relationship between WCI and the Mayor was created by D.C. Code § 29-312(b). As the Mayor became WCI's agent for service of process in the District quite literally by operation of a statute, it plainly follows that he should be considered a statutory agent. Accordingly, defendant's notice of removal was timely.

The Court also rejects plaintiff's argument that it would be inequitable for WCI to benefit from its failure to comply with D.C. law. The Court's decision does not confer a benefit on WCI; it provides defendant with nothing more than the thirty-day removal period allowed by *§ 1446(b).* Nor does the Court's decision lead to an inequitable result. By contrast, it is plaintiff's approach that would lead to an unjust result in this case. The purpose of service is "to supply notice . . . that affords the

defendant a fair opportunity to answer the complaint and present defenses and objections." *Pilot Trading Co., 946 F. Supp. at 838* (quoting *Henderson v. United States, 517 U.S. 654, 116 S. Ct. 1638, 1648, 134 L. Ed. 2d 880 (1996)).* In this case, defendant [*11]  did not receive notice until it received a facsimile copy of the complaint on April 15, 1999. According to plaintiff's approach, defendant's failure to comply with § 29-399(e)(1) should reduce its time to remove the case to only 15 days. Moreover, the District of Columbia did not mail the complaint to WCI until May 14, 1999. If WCI had received the complaint only through the District, then according to plaintiff, WCI would not have been able to remove the case at all, as the time for removal would have already passed by the time the complaint arrived in the mail. Plaintiff provides no authority to support its argument that a defendant's failure to comply with a state law requiring the appointment of a registered agent for service of process should lead to the forfeiture of its right under federal law to remove a case to federal court. [6]

> 6  To the extent that WCI should be penalized for its failure to comply with D.C. law, remand of this case to the Superior Court would not be the appropriate sanction. The penalties for failure to comply with § 29-399(e)(1) are provided in § 29-399(e)(4).

[*12]  Finally, the Court notes that plaintiff's motion to remand is itself untimely. Title *28 U.S.C. § 1447(c)* provides that a motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under *section 1446(a).*" As the basis of plaintiff's motion to remand is untimeliness, not lack of subject matter jurisdiction, its motion to remand was due no later than 30 days after May 14, 1999, the date defendant's notice of removal was filed. *See Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 118 S. Ct. 2047, 2054, 141 L. Ed. 2d 364 (1998)* (noting that a motion to remand based on a defect in removal procedure such as untimeliness must be filed no later than 30 days after the filing of the removal notice); *Maniar v. FDIC, 979 F.2d 782, 784-785 (9th Cir. 1992)* (holding that, because untimely removal is a procedural defect and not jurisdictional, a motion to remand based on untimely removal must be filed within 30 days after the case is removed). Plaintiff's motion to remand was not filed until June 16, 1999, 33 days after defendant filed its notice of removal. [7] However, [*13]  because defendant has not objected to the untimeliness of plaintiff's motion, the Court's decision is not based on it. *See Student A. v. Metcho, 710 F. Supp. 267, 269 (N.D. Cal. 1989)* (remanding the action to state court even though the motion to remand was untimely where the defendants did not raise the objection of untimeliness, and therefore waived it). *But see In re Shell*

1999 U.S. Dist. LEXIS 19135, *

*Oil Co., 932 F.2d 1523, 1529 (5th Cir. 1991)* (concluding that defendants had not waived their objection to the timeliness of plaintiffs' motion for remand where defendants did not raise the issue until five months after the remand order in a motion for reconsideration).

> 7  *Federal Rule of Civil Procedure 6(e)* does not extend the thirty-day period provided by *§ 1447(c). See Pavone v. Mississippi Riverboat Amusement Corp., 52 F.3d 560, 566 (5th Cir. 1995). Rule 6(e)* applies only when a party is required to act within a prescribed period after service, not after filing. *See id.*

In sum,  [*14] because plaintiff served process on a statutory agent, defendant's motion to remand was not due until May 15, 1999, 30 days after defendant actually received a copy of the complaint. Thus, defendant's notice of removal, filed on May 14, 1999, was timely. Accordingly, it hereby is

ORDERED, that plaintiff's motion to remand is denied. [8]

> 8  Buried in the "wherefore clause" of its opposition, defendant included a request that the Court "examine the nature of the relationship between Plaintiff's counsel and WCI and determine if a conflict of interest exists." If defendant would like the Court to consider such a request, it must, after conferring with plaintiff, file a proper motion and accompanying memorandum providing specific points of law and authority in support of the motion. *See* Local Rule 108(a) & (m).

SO ORDERED.

Stanley S. Harris

United States District Judge

Date: OCT 26 1999

**TAB 2**

4 of 8 DOCUMENTS

**BENITEC AUSTRALIA LTD., Plaintiff, v. NUCLEONICS, INC., Defendant.**

**Civil Action No. 04-0174 JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 22008*

**September 29, 2005, Decided**

**SUBSEQUENT HISTORY:** Later proceeding at *Benitec Austl., Ltd. v. Nucleonics, Inc., 2007 U.S. App. LEXIS 17299 (Fed. Cir., July 20, 2007)*

**COUNSEL:** [*1] John W. Shaw, Esquire, Glenn C. Mandalas, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware. Of Counsel: Marc R. Labgold, Esquire, Kevin M. Bell, Esquire, and Scott A. M. Changers, Esquire of PATTON BOGGS LLP, McLean, Virginia; Richard J. Oparil, Esquire of PATTON BOGGS LLP, Washington, District of Columbia, for Plaintiff.

Paul E. Crawford, Esquire of CONNOLLY, BOVE, LODGE & HUTZ, Wilmington, Delaware. Of Counsel: Dennis J. Mondolino, Esquire and Jason A. Lief, Esquire of MORGAN LEWIS & BOCKIUS LLP, New York, New York, for Defendant.

**JUDGES:** FARNAN, District Judge.

**OPINION BY:** Joseph J Farnan Jr.

**OPINION**

*MEMORANDUM OPINION*

September 29, 2005

Wilmington, Delaware

Joseph J Farnan Jr.

**FARNAN, District Judge**

Pending before the Court is the Motion For Voluntary Dismissal Without Prejudice (D.I. 108) filed by Plaintiff, Benitec Australia, Ltd. ("Benitec"). [1] For the reasons discussed, the Court will grant Benitec's motion.

---

[1] Defendant Nucleonics, Inc. filed an Unopposed Motion And Supporting Memorandum To File A Surreply In Opposition To Plaintiff's Motion For Voluntary Dismissal Without Prejudice (D.I. 117). The Court will grant the Motion, and the Surreply will be deemed filed.

[*2] **BACKGROUND**

The parties are engaged in conducting research and developing technologies to create therapeutics to treat disease using gene silencing technologies. On March 22, 2004, Benitec filed its Complaint (D.I. 1), alleging that Defendant, Nucleonics, Inc. ("Nucleonics"), infringes *U.S. Patent No. 6,573,099* ("the '099 patent").

On February 16, 2005, Nucleonics files a Motion To Amend Its Answer to add seven declaratory judgment counterclaims of non-infringement, patent invalidity under *35 U.S.C. § 102*, patent invalidity under *35 U.S.C. § 103*, patent invalidity under *35 U.S.C. § 112(1)*, patent invalidity under *35 U.S.C. § 112(2)*, patent invalidity under *35 U.S.C. § 116*, and patent unenforceability. (D.I. 91). On September 14, 2005, the Court issued an Order granting Nucleonics' Motion To Amend Its Answer (D.I. 119).

The parties have not yet completed discovery.

**PARTIES' CONTENTIONS**

By its motion, Benitec contends that this case should be dismissed without prejudice pursuant to *Federal Rule of Civil Procedure 41(a)* [*3] because of a substantive change in the law with regard to the scope of the exemption set forth in *35 U.S.C. § 271(e)(1)*. Specifically, Benitec contends that the recent decision of the United States Supreme Court in *Merck KGAA v. Integra Lifesciences I. Ltd., 162 L. Ed. 2d 160, 125 S. Ct. 2372 (2005)*, had the effect of negating the case or controversy before the Court with regard to infringement of Benitec's patents and, therefore, dismissal is warranted.

In response, Nucleonics contends that the Court retains jurisdiction to decide its counterclaims for invalidity, unenforceability, and non-infringement because Nucleonics has a reasonable apprehension of being sued by Benitec in the future. Nucleonics argues that, because Benitec filed a lawsuit for patent infringement against Nucleonics and Benitec has not provided Nucleonics with a covenant not to sue for past, present, and future acts, jurisdiction over the declaratory judgment counterclaims exists.

## LEGAL STANDARD

When a plaintiff moves for a dismissal without prejudice under *Rule 41(a)(2)*, the decision to dismiss with prejudice or without is left to the discretion of the court. *Buse v. Vanguard Group of Inv. Cos., 1994 U.S. Dist. LEXIS 3978, No. 91-3560, 1994 WL 111359,* [*4] *at *2 (E.D. Pa Apr. 1 1994)*. Specifically, *Rule 41(a)(2)* provides: "An action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant . . . the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." *Fed. R. Civ. P. 41(a)(2)* (2004). A *Rule 41(a)(2)* motion "will be determined after attempting to secure substantial justice to both parties." *DuToit v. Strategic Minerals Corp., 136 F.R.D. 82 (D. Del. 1991) citing Lunn v. United Aircraft Corp., 26 F.R.D. 12, 14 (D. Del. 1960)*. Moreover, while considering the legitimate interests of both parties, the Court must bear in mind that a plaintiff's motion should be granted absent substantial prejudice to the defendant. *Id. 1994 U.S. Dist. LEXIS 3978, [WL] at 10*.

## DISCUSSION

The Court concludes that: dismissing Benitec's action would not cause substantial prejudice to Nucleonics [*5] because no actual controversy supports jurisdiction under the Declaratory Judgment Act for Nucleonic's declaratory judgment claims against Benitec.

Nucleonics objects to dismissing Benitec's action without prejudice because Nucleonics contends that Benitec's action "brought a public cloud of uncertainty" over Nucleonics. (D.I. 110 at 2.) Thus, Nucleonics contends that Benitec should not now be allowed to leave the playing field, keeping its patent safe from scrutiny with regard to invalidity or unenforceability, while continuing to taint Nucleonic's current and future business and technology with the threat of another lawsuit. Nucleonics argues that the Declaratory Judgment Act, *28*

*U.S.C. § 2201*, permits the Court to independently adjudicate Nucleonics' counterclaims.

The Declaratory Judgment Act "requires an actual controversy between the parties before a federal court may exercise jurisdiction over an action for a declaratory judgment." *EMC Corp. v. Norand Corp., 89 F.3d 807, 810 (Fed. Cir. 1996)*. Nucleonics has the burden of establishing the existence of an actual case or controversy. *See Cardinal Chemical Co. v. Morton Intern., Inc., 508 U.S. 83, 95, 124 L. Ed. 2d 1, 113 S. Ct. 1967 (1993)*. [*6] When a party has actually been charged with infringement of a patent, there is, necessarily, a case or controversy adequate to support jurisdiction of a counterclaim pursuant to the Declaratory Judgment Act. *Id. at 96*. Furthermore, a counterclaim questioning the validity or enforceability of a patent raises issues beyond the initial claim for infringement. *Id.* The issue before the Court, then, is whether an actual controversy sufficient to support the Court's jurisdiction over Nucleonics' declaratory judgment counterclaims continues to exist if Benitec's patent infringement claim is dismissed.

Benitec contends that dismissing its infringement claim divests the Court of jurisdiction to hear the counterclaims. However, a number of courts have held that withdrawing a charge of infringement will not necessarily preclude the existence of an actual controversy, especially if, as here, the withdrawal occurs after the filing of the declaratory judgment action. *See, e.g., C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 881 (Fed. Cir. 1983)*; *Societe de Conditionnement v. Hunter Eng'g, 655 F.2d 938 (9th Cir. 1981)*. In turn, Nucleonics contends [*7] that, because Benitec has refused to enter into a covenant not to sue for enforcement of the *'099 patent* against Nucleonics at a later time, an actual controversy necessarily exists. However, a patentee's refusal to promise not to enforce the patent, while "relevant to the [actual controversy] determination," is "not dispositive." *BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 980 (Fed. Cir. 1993)*.

In the alternative, Nucleonics contends that it has a reasonable apprehension of suit because Benitec has already sued Nucleonics and others for patent infringement, Benitec has not promised not to assert the *'099 patent* against Nucleonics in the future, and Benitec has requested a voluntary dismissal of its action without prejudice. In reply, Benitec contends that Nucleonics has nothing to fear because Nucleonics' research activities are exempt from infringement liability pursuant to *§271(e)(1)* and the Supreme Court's decision in *Integra*.

The test for determining whether an actual case or controversy exists in a declaratory judgment action involving patents is two-pronged. First, the defendant's conduct must have created on the part of the plaintiff a

2005 U.S. Dist. LEXIS 22008, *

reasonable [*8] apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the product or have prepared to produce that product. *Indium Corp. v. Semi-Alloys, Inc., 781 F.2d 879 (Fed. Cir. 1985)*

With regard to the first prong, the Court concludes that Nucleonics has demonstrated a reasonable apprehension of suit. The factual background in this case is such that Nucleonics could be concerned that Benitec would, at some time, file a patent infringement suit against it. By suing Nucleonics and alleging that Nucleonics' technology is now covered by the Benitec's patent, Benitec has engaged in a course of conduct that shows a willingness to protect that technology. *See, e.g., C.R. Bard v. Schwartz, 716 F.2d 874, 880-81 (Fed. Cir. 1983)*; *Int'l Medical Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc., 787 F.2d 572, 575, 229 U.S.P.Q. 278, 281 (Fed. Cir. 1986)*

With regard to the second prong, production or preparation of a product. Nucleonics contends that its entire research effort is devoted to the RNAi area of technology and its [*9] activities will ultimately leave the safe harbor created by *Integra*. Nucleonics further alleges that it anticipates beginning research on livestock diseases, which are unprotected by the safe harbor. In response, Benitec argues that future infringement is not ripe for adjudication because Benitec's product may never be approved by the FDA or may be approved in a form that does not implicate the claims of the *'099 patent*. (D.I. 115 at 18.)

The declaratory judgment plaintiff carries the burden of proving the existence of facts underlying its allegations of the existence of an actual controversy. *Jervis B. Webb Co., 742 F.2d 1388, 1399 (Fed. Cir. 1984)*. On the record before it, the Court concludes that Nucleonics has not demonstrated that it has produced or has prepared to produce a product that would be the target of an infringement lawsuit by Benitec. At the time this lawsuit was filed, Nucleonics was several years away from obtaining FDA approval. Further, as argued by Benitec, there is no certainty that any product approved by the FDA would be the same product that was in clinical trials at the time this lawsuit was filed. And finally, Nucleonics has adduced [*10] no evidence that it has undertaken sales or marketing activity with regard to any product. For these reasons, he Court concludes that any threat of litigation that may have existed now lacks sufficient immediacy and reality to support declaratory judgment jurisdiction.

## CONCLUSION

In the circumstances presented here, the Court concludes that no actual controversy supports jurisdiction under the Declaratory Judgment Act for Nucleonic's declaratory judgement claims against Benitec with regard to the *'099 patent*. Accordingly, the Court will grant Benitec's Motion For Voluntary Dismissal Without Prejudice (D.I. 108).

An appropriate Order will be issued.

## *ORDER*

At Wilmington, this 29th day of September 2005, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that:

1. The Motion For Voluntary Dismissal Without Prejudice (D.I. 108) filed by Plaintiff, Benitec Australia, Ltd. is *GRANTED.*

2. Defendant Nucleonics, Inc.'s Unopposed Motion And Supporting Memorandum To File A Surreply in Opposition To Plaintiff's Motion For Voluntary Dismissal Without Prejudice (D.I. 117) is *GRANTED.*

3. The Surreply attached as Exhibit [*11] 1 to the Unopposed Motion And Supporting Memorandum To File A Surreply In Opposition To Plaintiff's Motion For Voluntary Dismissal Without Prejudice (D.I. 117) is deemed filed.

*Joseph J. Farnan Jr.*

United STATES DISTRICT JUDGE

**TAB 3**

3 of 8 DOCUMENTS

**JERON D. BROWN, Plaintiff, v. SGT. D. M. WILLIAMS and COUNSELOR MR. KROMKA, Defendants.**

**Civil Action No. 00-560-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2001 U.S. Dist. LEXIS 25550*

**December 17, 2001, Decided**

**SUBSEQUENT HISTORY:** Appeal dismissed by *Brown v. Williams, 53 Fed. Appx. 226, 2002 U.S. App. LEXIS 27524 (2002)*

**DISPOSITION:**    [*1] Defendant's motion for summary judgment granted.

**COUNSEL:** Jeron D. Brown, Plaintiff, Pro se, Wilmington, Delaware.

Stuart B. Drowos, Esquire, Deputy Attorney General, Wilmington Delaware. Attorney for the Defendant.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOSEPH J. FARNAN, JR.

**OPINION**

*MEMORANDUM OPINION*

Wilmington, Delaware

**FARNAN, District Judge**

Presently before the Court is a Motion To Dismiss filed by Defendant Sgt. D. M. Williams (hereinafter "Defendant") pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. (D.I. 15). Defendant has submitted materials outside of the pleadings and, in his reply brief, has requested that the Court alternatively treat his Motion as a Motion For Summary Judgment. (*See* D.I. 20). Although not in conformity with the District's Local Rules, Plaintiff Jeron D. Brown (hereinafter "Plaintiff") has filed a sur-reply brief which addresses Defendant's alternative request. (D.I. 22). Because the Court will consider Plaintiff's sur-reply brief, the Court concludes that the Plaintiff has had a "reasonable opportunity" to respond to Defen-

dant's [*2] delayed request to treat his Motion as a Motion For Summary Judgment. *See In re Rockefeller Ctr. Props., Sec. Litig., 184 F.3d 280, 288 (3d Cir. 1999)* (citing *Rose v. Bartle, 871 F.2d 331, 340 (3d Cir. 1989)*) (holding that the Court must provide a "reasonable opportunity" for the parties to respond before a motion is converted to a motion for summary judgment). Accordingly, pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, the Court will consider the materials submitted in addition to the pleadings and will treat Defendant's Motion as one for Summary Judgment in accordance with *Federal Rule of Civil Procedure 56*.

For the reasons set forth below, Defendant's Motion For Summary Judgment will be granted.

**I. Background**

Defendant is a Correctional Officer employed at the Multi-Purpose Criminal Justice Facility (hereinafter "MPCJF") in Wilmington, Delaware, where Plaintiff, a *pro se* litigant, is incarcerated. (D.I. 5 at 1). On October 20, 1999, Defendant was instructed by his superior officer, Captain Bradley Lee, to conduct a search of inmate Rudolph Hardin's [*3] cell based on information that Hardin was in possession of contraband. (D.I. 16, Ex. A). The search of Hardin's cell confirmed that Hardin was in possession of contraband, including photocopies of pornographic pictures and letterhead writing paper. (D.I. 16, Ex. A; D.I. 20). Defendant immediately questioned Hardin regarding the source of the contraband found in his possession and Hardin indicated that Plaintiff was his supplier. After a brief investigation, Defendant learned from MPCJF's law librarian that Plaintiff was a member of MPCJF's work program, worked in MPCJF's law library, and had unsupervised access to the photocopier. (D.I. 16, Ex. A).

On October 23, 1999, Plaintiff was removed from MPCJF's work program and transferred to a non-work program cell pending further investigation. (D.I. 2 at 4;

2001 U.S. Dist. LEXIS 25550, *

D.I. 16, Ex. A). In immediate response to the transfer, Plaintiff filed a grievance report against Defendant on October 23, 1999. (D.I. 2 at 4). On November 1, 1999, Defendant was notified of Plaintiff's grievance by MPCJF's Grievance Chair. (D.I. 2 at 5).

On November 5, 1999, Defendant and another correctional officer were ordered by Captain Lee to search Plaintiff's cell in furtherance [*4] of the pending investigation. [1] Because this search revealed contraband similar to that found in Hardin's cell, Defendant filed a discipline report against Plaintiff, charging both Class One and Two Offenses. (D.I. 16; Ex. A; D.I. 2 at 7). Plaintiff was subsequently exonerated of these charges at a discipline hearing held on December 10, 1999, and on December 17, 1999, Plaintiff was moved back to a work program cell. (D.I. 2 at 10).

> 1   Although Plaintiff contends that there is no clear evidence which illustrates that Captain Lee ordered Defendant to search Plaintiff's cell, Defendant has supplied a memorandum to MPCJF's Grievance Chair, written by Major Perry Phelps, which confirms this fact. (D.I. 16, Ex. A and C).

## II. Procedural History

On June 9, 2000, Plaintiff filed a complaint against Defendant alleging violations of his First, Fourth, Eight and *Fourteenth Amendment* rights under the United States Constitution. [2] (D.I. 2 at 13, 28, 39). On September 21, 2000, Plaintiff's Fourth, Eighth and *Fourteenth* [*5] *Amendment* claims were dismissed as frivolous pursuant to *28 U.S.C. § 1915*. (D.I. 5). Accordingly, Plaintiff's *First Amendment* Retaliation Claim, made pursuant to *42 U.S.C. § 1983*, is the only remaining claim.

> 2   Plaintiff also filed a Complaint against Mr. Kromka, a Counselor at MPCJF, alleging *Fourteenth Amendment* violations. (D.I. 5) However, all claims against Mr. Kromka have been dismissed pursuant to *28 U.S.C. § 1915*, and thus, these claims will not be addressed. (D.I. 5)

## III. Standard of Review

Under *Rule 56 of the Federal Rules of Civile Procedure*, a party is entitled to summary judgment if the court determines that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. *FED. R. CIV. P. 56(c)*. In determining whether there is a triable issue of material fact a court must review all of [*6] the evidence and construe all of the inferences in a light most favorable to the non-moving party. *Spain v. Gallegos, 26 F.3d 439, 446 (3d Cir. 1994)* (citing *Petruzzi's IGA Supermarkets, Inc. v.*

*Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993))*.

## IV. Discussion

A *First Amendment* retaliation claim made by a prisoner-plaintiff pursuant to *42 U.S.C. § 1983* must establish three elements. First, a plaintiff must prove that he or she has a protected *First Amendment* right in the speech at issue. *Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)*. Second, a plaintiff must establish that he or she has suffered an "adverse action" at the hands of a prison official. *Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)*. Finally, a plaintiff must establish a causal connection between the assertion of his or her protected speech and the adverse action taken. *Rauser, 241 F.3d at 333*.

In this case, there is not an issue with regard to the first and second elements of Plaintiff's retaliation claim. Specifically, a prisoner has a protected *First Amendment* right in filing a [*7] grievance report against a prison official. *See Quinn v. Cunningham, 879 F. Supp. 25, 27-28 (E.D. Pa. 1996)*, *aff'd, 85 F.3d 612 (3d Cir. 1996)*. Additionally, Defendant's search of Plaintiff's cell subsequent to the filing of Plaintiff's grievance report could be "sufficient to deter a [prisoner] of ordinary firmness from exercising his constitutional rights," and thus, could constitute an "adverse action." *See Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)*. Accordingly, the Court need only address the third "causal connection" element of Plaintiff's retaliation claim.

The causal connection element of a retaliation claim requires a burden shifting analysis. Specifically, a plaintiff bears the initial burden of proving that his or her protected speech was a "substantial or motivating" factor in the defendant's decision to take adverse action. *Rauser, 241 F.3d at 333*. Then, if a plaintiff establishes this connection, the burden shifts to defendant to prove by a preponderance of the evidence that he or she would have taken the same action absent the protected speech. *Id.*

In determining whether a causal connection [*8] exists, the Court must consider the temporal proximity between the assertion of the protected speech and the contended adverse action. *Id. at 334*. The Court, however, should also afford deference to the decisions of prison officials in light of the difficulty in administrating a prison. *Id.* For example, actions by prison officials which impinge on the constitutional rights of an inmate are nonetheless valid if they are "reasonably related to legitimate penological interests." *Turner v. Safley, 482 U.S. 78, 89, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1987)*.

Plaintiff contends that both the timing of Defendant's search and Defendant's conduct illustrates that Defendant searched Plaintiff's cell in retaliation for the

2001 U.S. Dist. LEXIS 25550, *

grievance Plaintiff filed against Defendant. (D.I. 21 at 2-3). Specifically, Plaintiff contends that while Defendant neglected to search his cell in the twelve days that passed between the search of Hardin's cell and the time Defendant learned of Plaintiff's grievance, Defendant searched Plaintiff's cell just four days after he learned of the grievance. (D.I. 21 at 2-3). Additionally, Plaintiff contends that Defendant should have, in good faith, notified [*9] Captain Lee of Plaintiff's grievance before searching Plaintiff's cell. (D.I. 22 at 3).

Defendant, on the other hand, contends that his search of Plaintiff's cell was not performed in retaliation for Plaintiff's grievance, but rather, in response to an order by his superior officer, Captain Lee. (D.I. 16, P 5). Specifically, Defendant contends that Captain Lee ordered the search of Plaintiff's cell as part of the continuing investigation of Plaintiff, which was initiated by the information Defendant obtained from Hardin and the MPCJF librarian. (D.I. 20, P 4).

After reviewing the contentions of the parties and the applicable law, the Court concludes that Defendant's search of Plaintiff's cell was supported by a legitimate penological interest and was not a retaliatory action. Specifically, as evidenced by Major Phelps' Memorandum to MPCJF's Grievance Chair, Captain Lee ordered Defendant to conduct the search of Plaintiff's cell only after learning of the incriminating information supplied by both inmate Hardin and MPCJF's librarian. (D.I. 20, P 4; D.I. 16, Ex. C). The Court finds that the purpose of the search was to determine whether Plaintiff was in fact the supplier of the contraband [*10] found in Hardin's possession. Additionally, although Defendant did search Plaintiff's cell just four days after he learned of Plaintiff's grievance, the Court is convinced that the ongoing investigation and the order of Captain Lee for Defendant to conduct the search illustrate that retaliation was not the purpose intended by Defendant. Therefore, Defendant's Motion For Summary Judgment (D.I. 15) will be granted.

## V. Conclusion

For the reasons discussed, the Court will enter an order granting Defendant's Motion For Summary Judgment (D.I. 15) pursuant to *Federal Rule of Civil Procedure 56.*

### *ORDER*

At Wilmington this 17 day of December, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendant Sgt. D. M. Williams' Motion For Summary Judgment (D.I. 15) is ***GRANTED.***

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

# **TAB 4**

4 of 8 DOCUMENTS

**EATON CORPORATION, Plaintiff, v. ROCKWELL INTERNATIONAL CORPORATION and MERITOR, AUTOMATIVE, INC., Defendants.**

**C.A. No. 97-421-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2000 U.S. Dist. LEXIS 21210*

**November 7, 2000, Decided**

**DISPOSITION:**    [*1] Plaintiff's Motion for Finding of Sanctionable Conduct with leave to renew upon issuance of the Court's Bench Opinion (D.I. 477) denied; Plaintiff's Motion to Supplement the Record on the Issue of Inequitable Conduct and its Motion for Enhancement of Damages (D.I. 477) denied; and Defendants' Motion for Leave to File Surreply (D.I. 481) granted.

**COUNSEL:** For EATON CORPORATION, plaintiff: Donald E. Reid, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For Plaintiff: Michael H. King, Esquire, Keith P. Schoeneberger, Esquire, Kurt H. Feuer, Esquire, Peter N. Witty, Esquire, Of Counsel, ROSS & HARDIES, Chicago, Illinois.

For Plaintiff: J. Frank Osha, Esquire, William H. Mandir, Esquire, Of Counsel, SUGHRUE, MION, ZINN, MACPEAK & SEAS, Washington, D.C.

For ROCKWELL INTERNATIONAL CORPORATION, MERITOR AUTOMOTIVE, INC., defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For Defendant: Michael S. McGinniss, Esquire, POTTER, ANDERSON & CORROON, Wilmington, Delaware.

For Defendant: Richard W. McLaren, Jr., Esquire, Jerold B. Schnayer, Esquire, Eric C. Cohen, Esquire, Walter J. Kawula, Jr., Esquire, Of Counsel, WELSH & KATZ, LTD., Chicago, Illinois.

[*2]    For ROCKWELL INTERNATIONAL CORPORATION, MERITOR AUTOMOTIVE, INC.,

counter-claimants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For EATON CORPORATION, counter-defendant: Donald E. Reid, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Joseph J. Farnan, Jr., District Judge.

**OPINION BY:** Joseph J. Farnan, Jr.

**OPINION**

*MEMORANDUM OPINION*

> November 7, 2000
>
> Wilmington, Delaware
>
> Joseph J. Farnan, Jr.

**District Judge.**

Presently pending before the Court is Plaintiff Eaton's Motion for Finding of Sanctionable Conduct and to Supplement the Record on the Issue of Inequitable Conduct and Eaton's Motion for Enhancement of Damages (D.I. 477), and Defendants' Motion for Leave to File Surreply (D.I. 481). For the reasons set forth below, the Court will deny the Plaintiff's motions and will grant the Defendants' motion.

**BACKGROUND**

This action was brought by Eaton Corporation ("Plaintiff") against Rockwell International Corp. and Meritor Automotive, Inc. (collectively "Defendants") for infringement of *U.S. Patent Number 4,850,236 ("the '236 patent")*. The *'236 patent* was issued to Plaintiff on July 25, 1989 and claims methods of eliminating [*3] some of the complexities of manual shifting in heavy-duty trucks by creating an automated driveline system that

Case 1:06-cv-00486-JJF    Document 76-5    Filed 12/04/2007    Page 16 of 16

Page 2
2000 U.S. Dist. LEXIS 21210, *

permits clutchless shifting. In its complaint, Plaintiff asserted that Defendants had been infringing claims 14 through 19 of the *'236 patent* by selling the Electronic Synchro Shift transmission system ("the ESS system").

A jury trial on the issue of infringement of claims 14 through 19 of the *'236 patent* commenced on June 23, 1998. Defendants' defenses of invalidity and noninfringement were also tried to the jury. On July 1, 1998, the jury rendered a verdict upholding the validity of claims 14 through 19 of the *'236 patent* and finding that Defendants' ESS transmission system infringed these claims. The jury awarded Plaintiff damages in the amount of $ 1,242,261 and further found that Defendants willfully infringed the *'236 patent*. (D.I. 298).

Defendants additionally claim that Plaintiff had engaged in inequitable conduct. This claim is based on allegations that Plaintiff intentionally withheld information from the patent examiner with the intent to deceive the Patent Office. The inequitable conduct phase was tried before the Court on April 20 and 21, 1999. Subsequent to [*4] the bench trial, both parties filed motions seeking various forms of relief, towards which the Court now turns its attention.

## DISCUSSION

### I. Plaintiff's Motions (D.I. 477)

Plaintiff first argues that, pursuant to *Rule 37(c)(1)* [1] *of the Federal Rules of Civil Procedure*, the Court should find that Defendants engaged in sanctionable conduct by committing various discovery abuses. (D.I. 477 at 1). More specifically, Plaintiff argues that Defendants withheld a pending patent application from both Plaintiff and the Court, which involved a "dithering torque control system" that ultimately became *U.S. Patent Number 5,980,424 ("the '424 patent")*, owned by Meritor Automotive, Inc. and Detroit Diesel Corporation. (D.I. 477 at 1-2). Plaintiff argues that Defendants' failure to produce the *'424 patent* deprived Plaintiff of material evidence that it could have used during both phases of the trial. (D.I. 477 at 2).

> 1    *Rule 37(c)* authorizes the Court to issue sanctions against a litigant who fails to disclose information required under *Rule 26(a)* or *Rule 26(e)(1) of the Federal Rules of Civil Procedure.* *FED. R. CIV. P. 37(c)(1)*.

[*5]  The Court finds that the issues presented in this motion should be resolved following the issuance of the inequitable conduct Bench Opinion. The Court will

therefore deny Plaintiff's Motion for Finding of Sanctionable Conduct with leave to renew upon issuance of the Bench Opinion. Because the Court is reserving decision on the motion for a finding of sanctionable conduct, the Court will not consider the allegations contained in this motion for purposes of the Bench Opinion. Plaintiff's Motion to Supplement the Record on the Issue of Inequitable Conduct and for Plaintiff's Motion for Enhancement of Damages is therefore also denied.

### II. Defendants' Motion (D.I. 481)

Defendants assert that, because Plaintiff raised a novel argument in its reply brief (D.I. 480) for the above discussed motions (D.I. 477), the Court should allow Defendants to file their proposed surreply in order to respond to Plaintiff's new argument. (D.I. 481). More specifically, Defendant argues that, while Plaintiff's initial brief in support of its motion only alleged that Defendants withheld information regarding the *'424 patent*, Plaintiff's reply brief argues for the first time that Defendants also [*6] withheld information regarding *U.S. Patent No. 5,984,828 ("the '828 patent")*. Defendants argue that they are therefore entitled to file a surreply under Local Rule 7.1.3(c)(2).

Under Local Rule 7.1.3(c)(2), a party is prohibited from reserving material for its reply brief when that material "should have been included in a full and fair opening brief." D. Del. L.R. 7.1.3(c)(2). Since Plaintiff asserts that it lacked knowledge of the *'828 patent* prior to filing its initial brief, the Court does not believe that the new allegations should be ignored. Rather, the Court will grant Defendants' Motion for Leave to File Surreply in order to allow Defendants an adequate opportunity to respond to the new allegations.

## CONCLUSION

Therefore, for the reasons discussed, the Court will deny Plaintiff's Motion for Finding of Sanctionable Conduct with leave to renew upon issuance of the Court's Bench Opinion (D.I. 477); will deny Plaintiff's Motion to Supplement the Record on the Issue of Inequitable Conduct and its Motion for Enhancement of Damages (D.I. 477); and will grant Defendants' Motion for Leave to File Surreply (D.I. 481). The Court orders that Defendants' Proposed Surreply (attached [*7] to their motion) is filed as of the date of this Memorandum Opinion.

An appropriate Order has been entered.