IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

EDITH CHOMA,                          )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )        C.A. No. 06-486-JJF
                                      )
BLUE CROSS BLUE SHIELD                )
OF DELAWARE,                          )
                                      )
                    Defendant.        )


## JOINT PRETRIAL STIPULATION AND ORDER

This matter having come before the court at a pretrial conference held pursuant to

Federal Rule of Civil Procedure 16 and Herbert Mondros, Esquire, Margolis Edelstein,

having appeared as counsel for Plaintiff, and Scott A. Holt and Adria B. Martinelli,

Esquire, Young Conaway Stargatt & Taylor, LLP, having appeared as counsel for

Defendant, the following actions were taken:

**(1)     A statement of the nature of the action, the pleadings in which the
          issues are raised and whether counterclaims, cross-claims, etc., are
          involved.**

**Plaintiff's Statement:**

On August 7, 2006, Plaintiff Edith Choma filed a complaint against

Defendant Blue Cross Blue Shield of Delaware asserting claims of age discrimination

under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq.  and

19 Del. C. § 711 (2006), disability discrimination under the Americans with Disabilities

Act of 1990, 42 U.S.C. §12101 et seq., and 19 Del. C. § 723, 724, and 726 (2006),

retaliation, and breach of the covenant of good faith and fair dealing.

In 1989, defendant Blue Cross Blue Shield of Delaware ("BCBSD") hired Edith as an administrative assistant. For ten years, Edith had an exemplary employment record at BCBSD. In 1999, at age 60, Edith came under the direct supervision of BCBSD's Chief Medical Officer, Dr. Paul Kaplan. It was then that BCBSD began discriminating against Edith, (who had a hearing impairment due to Meniere's Disease and later, a broken wrist), on the basis of her age and her disabilities.

Ironically, Dr. Kaplan was, and is, himself totally and permanently disabled from practicing medicine due to a brain injury that caused him memory loss and personality changes. Dr. Kaplan became furious that Edith's hearing impairment impeded her ability to do transcription (even though transcription was not a part of Edith's job description). Dr. Kaplan gave Edith a poor performance evaluation, and told Edith, among other things, (1) "I can't stand the way you lift up your glasses to see the screen!"; (2) "Maybe it's your Thyroid"; (3) "Maybe the blood isn't getting to your brain!"; and (4) "You know the saying "Kick the Dog", that's why I treat you the way I do!" Although Dr. Kaplan denies making these statements to Edith, he admits he told other BCBSD managers that he wanted "to get rid of Edith because she couldn't hear."

Ultimately, Dr. Kaplan did get rid of Edith, by demoting her to work for his subordinate, Debbie Sweeney. In turn, Dr. Kaplan promoted Patricia Carpenter who was 14 years younger than Edith and non-hearing impaired, to be his secretary. Even after this demotion, BCBSD continued to discriminate against Edith. Edith was still required to do Kaplan's transcription. Sweeney screamed at Edith in the presence of other employees. Sweeney also timed Edith to determine whether Edith was typing Denial and

DB01:2627234.2                                                              052305.1028

Appeal Letters quickly enough. (These are the letters BCBSD sends to advise its health insurance subscribers that it is denying their benefits).

Edith filed complaints with the Delaware Department of Labor and the EEOC in November 2002 and October 2004. In retaliation, Sweeney, Kaplan and BCBSD put Edith on a Performance Improvement Plan because Edith could not type the Denial and Appeal letters quickly enough, even though Edith had a broken wrist and was typing with one hand! This was the last straw for Edith who was forced into retirement from BCBSD in 2004 at age 65.

On May 9, 2006, Edith received her Right-to-Sue Letter from the EEOC, and on August 7, 2006, Edith filed her Complaint in this action. The Complaint asserts claims for: Violation of the Age Discrimination in Employment Act (Count I); Age Discrimination under State law (Count II); Disability Discrimination under State Law (Count III); Violation of the Americans With Disabilities Act (Count IV); Disability Discrimination (Count V); Retaliation (Count VI); Failure to Promote (Count VII); and Breach of the Covenant of Good Faith and Fair Dealing (Count VIII).

**Defendant's Statement:**

Plaintiff Edith Choma, filed suit against her former employer, Blue Cross Blue Shield of Delaware (BCBSD) on August 7, 2006. There are no counterclaims or cross-claims.

Defendant contends that Plaintiff was not subjected to unlawful discrimination because of her disability or age, and that it did not engage in unlawful retaliation. Plaintiff is a former administrative assistant in BCBSD's Medical Management Division.

As administrative assistant, she performed general secretarial duties for the Medical Director and other employees in the division.

In 1999, she was assigned to support the new Medical Director, Dr. Paul Kaplan, who was given instructions by the board of directors to obtain accreditation for BCBSD with a national organization focusing on quality assurance. The accreditation process was lengthy and involved an extensive survey of the insurer's practices and procedures. Part of Choma's duties included assisting him with administrative work necessary for the accreditation, including transcribing dictation and committee minutes.

Kaplan was dissatisfied with Choma's overall performance, particularly with the speed and accuracy of her work. She also made mistakes transcribing Kaplan's dictation. She attributed these mistakes to a hearing impairment, but admitted there was no accommodation that could be made to assist her with this function. Kaplan's first evaluation of her performance in 1999 pointed out these deficiencies, but later he revised it after Choma complained that he did not understand all of the work she did for other employees in the division. Even after she was given credit for these additional responsibilities, however, Kaplan remained dissatisfied with Choma's overall organization and efficiency.

In July 2002, Kaplan transferred the responsibility for the quality assurance accreditation to the new Director of Quality Improvement, Debbie Sweeney. He assigned Choma to support Sweeney since Choma had experience with the accreditation process. Kaplan assigned another administrative assistant, Pat Carpenter, who had a reputation for efficiency and organization, to provide support for him. In November 2002 Choma filed a charge of discrimination based on her age and disability (hearing).

In July 2004, Sweeney assigned Choma to help Carpenter with the completion of insurance claim response letters which had steadily grown because of BCBSD's increasing membership. The rate at which Choma completed the letters was significantly less than what other employees completed. In October 2004, after monitoring Choma's lack of progress, Sweeney began drafting a performance improvement plan to set objectives for Choma to accomplish. Before the PIP was completed, however, Choma discovered the draft on Sweeney's computer, and subsequently announced her intention to retire. She retired on February 1, 2005 at age 65.

**(2)    The constitutional or statutory basis of Federal jurisdiction, together with a brief statement of the facts supporting such jurisdiction.**

Jurisdiction is admitted.

**(3)    The following facts are not disputed or have been agreed to or stipulated to by the parties:**

1.    Choma began working at BCBSD in 1989 as a secretary.

2.    In 1999, Plaintiff began reporting to Dr. Paul Kaplan, Medical Director for the Medical Management Division.

3.    Kaplan was dissatisfied with Choma's performance, including her ability to accurately transcribe his dictation.

4.    Kaplan gave Choma a performance evaluation in July 1999.

5.    Kaplan revised his 1999 evaluation after Choma complained about her performance evaluation to human resources.

6.    In August 2002 Choma began reporting directly to the Director of Quality Assurance, Deborah Sweeney.

7.    Patricia Carpenter, an administrative assistant who previously

5

reported to a retired senior vice president, began reporting directly to Paul Kaplan.

    8.    Edith filed a charge of discrimination with the EEOC and the Delaware Department of Labor on November 25, 2002.

    9.    On August 19, 2004, Edith fell and injured her right wrist.

    10.    On August 27, 2004 Choma went out on short term disability leave due to the injury to her right wrist.

    11.    On September 20, 2004, Choma returned to work from short term disability leave.

    12.    On October 22, 2004, Edith filed a charge of discrimination with the Department of Labor and the EEOC.

    13.    On October 29, 2004, Choma was given a performance improvement plan (PIP).

    14.    On November 3, 2004, Choma took a medical leave of absence.

    **(4)    A statement of the issues of fact which any party contends remain to be litigated.**

**Plaintiff's Statement:**

    1.    When Edith confronted Kaplan about her 1999 performance evaluation, Kaplan made several discriminatory and inappropriate statements to Edith.  He told her: (1) "I can't stand the way you lift up your glasses to see the screen!"; (2) "Maybe it's your Thyroid"; (3) "Maybe the blood isn't getting to your brain!"; and (4) "You know the saying "Kick the Dog", that's why I treat you the way I do!"  Kaplan denies making these statements.

    2.    Transcription was never a part of Edith's job description. Compare Edith's Job Description as provided by BCBSD, (no mention of transcription or

any duty analogous to transcription), with Kaplan's testimony in which he claims that transcription was an essential part of Edith's job.

    3.    Edith was demoted in the summer of 2002 from administrative assistant to Chief Medical Officer Kaplan to administrative assistant to Director of Quality Improvement Deborah Sweeney.  Edith was again demoted in or around December 1, 2003 when she was directed to report directly to Kaplan's administrative assistant, Patricia Carpenter.

    4.    BSBSD claims that Edith never requested an accommodation for her hearing impairment.   The record, however, reflect that Edith and BCBSD did agree on an accommodation: Edith would do the transcription "in the best form she could and [Kaplan] would then have to fill in the blanks."  Despite this "accommodation," BCBSD continued to complain about Edith's transcription and discriminate against Edith.

**Defendant's Statement:**

    1.    Did Paul Kaplan make demeaning statements to Choma during her 1999 performance review?

    2.    Whether Choma's hearing condition constitutes a physical impairment?

    3.    Whether Choma's hearing condition substantially limited a major life activity?

    4.    Whether Choma could perform the essential functions of her job?

    5.    Did Kaplan comment that he wanted to terminate Choma because she could not perform her job due to her hearing condition?

    6.    Was Choma demoted when she was reassigned to support Deborah Sweeney?

7.    Did Kaplan believe that Pat Carpenter was more efficient and organized than Choma?

8.    Was Choma treated differently than others regarding overtime or use of time off?

9.    Was Choma assigned to a new cubicle in "deplorable" condition?

10.    Did Deborah Sweeney routinely berate Choma in front of co-workers?

11.    Was Carpenter Choma's direct supervisor?

12.    Did Choma complete claim response letters in a timely and accurate manner?

13.    Did Choma work overtime without authorization?

14.    Did Choma access Sweeney's hard drive without permission to view the draft of her performance improvement plan?

15.    Did Choma voluntarily choose to retire at age 65?

**(5)    A statement of the issues of law which any party contends remain to be litigated.**

**Plaintiff's Statement:**

Plaintiff reserves all issues raised in her pending motion for summary judgment. In addition, Plaintiff intends to file *motions in limine* and incorporates those issues and authorities by reference.

1.    Whether Defendant discriminated against Plaintiff on the basis of her age and disability and whether Defendant retaliated against Plaintiff for complaining about this discrimination to BCBSD, the EEOC and the Delaware Department of Labor.

**Defendant's Statement:**

Defendant reserves all issues raised in its pending motion for summary judgment. In addition, Defendant intends to file *motions in limine* and hereby incorporates those issues and authorities by reference.

1.   Whether Choma was a qualified individual with a disability within the meaning of the ADA?

2.   Whether Choma's 1999 performance review constituted an adverse employment action?

3.   If so, is that claim time-barred?

4.   Whether Choma's 1999 performance review was motivated by age or disability?

5.   Whether Kaplan's alleged statements to Choma in July 1999 are time barred?

6.   Whether Kaplan's alleged statement about Choma's hearing impacting her ability to perform her job is evidence of discrimination under the ADA?

7.   Whether Choma's transfer to support Sweeney constituted an adverse employment action?

8.   Whether Choma's transfer to support Sweeney was motivated by age or disability?

9.   Is there a causal connection between Choma's charge of discrimination and the performance improvement plan?

10. Was the performance improvement plan in retaliation for Choma's charge of discrimination?

DB01:2627234.2                                                                                    052305.1028

11. Would BCBSD have terminated Choma had it known she had accessed her supervisor's hard-drive?

12. Did Choma request and was she denied a reasonable accommodation under the ADA?

13. Was Choma constructively discharged?

14. Whether Choma suffered any damages?

15. Did Choma fail to mitigate her damages?

16. Did Defendant act in a good faith effort to comply with the law?

**(6)    A list of pre-marked exhibits, including designations of interrogatories and answers thereto, requests for admissions and responses, which each party intends to offer at the trial with a specification of those which will be admitted in evidence without objection, those that will be objected to and the Federal Rules of Evidence in support of said objection and the Federal Rule of Evidence relied upon by the proponent of the exhibit.**

## **Plaintiff's Exhibits**

| Plaintiff's Exhibit Number | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| PX1 – D559 | Employee Handbook Receipt signed on 8/9/89 | | |
| PX2 – P178 | Letter from Dr. Witt indicating that Edith has Meniere's Disease dated 4/5/95 | Objection. Relevancy (402); Confusing and Prejudicial (403); Hearsay (802); Inadmissible opinion testimony (702-703) | Relevant, probative & non-hearsay, |
| PX3 – D561 | Memo from Paul C. King, Jr., to Edith re: Edith selected to participate in the next | Objection. Relevancy (402) | Relevant |

| | QI team, dated 6/4/1998 | | |
|---|---|---|---|
| PX4 – P529 | Letter from Dr. Witt to Thomas Mannis re: Choma having Meniere's disease involving the right ear dated 10/20/95 | Objection. Relevancy (402); Confusing and Prejudicial (403); Hearsay (802); Inadmissible opinion testimony (702-703) | Relevant, probative & non-hearsay, |
| PX5 – P104 | Agreement to Retire for Edith, dated 11/16/98 | | |
| PX6 – P105 | Agreement Not to Retire by Edith, dated 11/23/98 | | |
| PX7 – D211 | 11/19/98 e-mail from Edith to Peg Bell re: helping with letters | Objection. Relevancy (402) | Relevant |
| PX8 – P998 | 1/5/99 e-mail from Peg Bell to Zakutny, Edith copied re: using name of physician on 1st and 2nd level appeals not CMO, Dr. Powell | Objection. Relevancy (402); Confusing and Prejudicial (403); Hearsay (802) | Relevant |
| PX9 – D97 | 4/21/99 e-mail from Edith to Kaplan re: appointment at Johns Hopkins for hearing loss | | |
| PX10 – D82 | Personnel record change for Edith and performance evaluation for 1999 | | |
| PX11 – D347 | 6/11/99 Memo from Zakutny to Peg Bell re: comp time | Objection. Relevancy (402); Confusing and Prejudicial (403); Hearsay (802) | Relevant |
| PX12 – P57 | 8/16/99 Memo from Zakutny to Kaplan re: letters typed in a two week time frame | Objection. Relevancy (402); Confusing and Prejudicial (403) | Relevant |
| PX13 – D586 | 8/17/99 - Personnel record change for Edith 3.9% Merit | | |

11

| | | | |
|---|---|---|---|
| | increase | | |
| PX14 – P648 | 9/2/99 e-mail from Joe Hall to Edith re: discussing content of job (followup about complaint Edith lodged against Kaplan and his review | Objection. Hearsay (802) | Non-hearsay |
| PX15 – D587 | Personnel Record Change for Edith - position reevaluated from grade 7 to grade 8 - 1.0 % increase dated 10/21/99 | | |
| PX16 - P745 | 11/11/99 e-mails between Kaplan and Edith re: tasks being performed by Edith | Objection. Document not sufficiently identified in accordance with local rules. | See Bates # supplied |
| PX17 – P1773 | 11/18/99 e-mails between Peg Bell and Edith re: Zakutny being on vacation and Edith doing the letters and asking Peg to ask Kaplan if she can work OT to complete them | Objection. Relevancy (402); Confusing and Prejudicial (403); Hearsay (802) | Relevant, non-hearsay |
| PX18 – D560 | 3/3/00 Memo to Edith from Kaplan re: incident with temporary worker and areas for Edith to improve | Objection. Relevancy (402) | Relevant |
| PX19 – D186 | 3/20/00 e-mail from Peg Bell to Edith re: thanks for great job typing manuals | Objection. Relevancy (402); Hearsay (802) | Relevant, non-hearsay |
| PX20 – D645 | Edith's 2000 performance evaluation | | |
| PX21 – P996 | 6/6/00 e-mails between Peg Bell and Edith re: Edith typing | Objection. Relevancy (402); Confusing and | Relevant, non-hearsay |

| | Zakutny's letter while she is out for two weeks | Prejudicial (403); Hearsay (802) | |
|---|---|---|---|
| PX22 – P1032 | 6/15/00 e-mails between Zakutny and Choma re: letters on disk for Edith to type while Zakutny on vacation | Objection. Relevancy (402); Confusing and Prejudicial (403) | Relevant |
| PX23 – D143 | Pat Carpenter's 2000 performance evaluation | | |
| PX24 – D187 | 1/29/01 e-mails between Eileen Brown and Choma re: thanks for Choma's help on getting the forms done for the case management and UM position. | | |
| PX25 – D96 | 5/7/01 e-mails between Pat Carpenter and Paul Kaplan re: Edith's sick time | Objection. Relevancy (402) | Relevant |
| PX26 – D653 | Edith's 2001 performance evaluation | | |
| PX27 – D133 | Pat Carpenter's 2001 performance evaluation | | |
| PX28 – P7 | Medical Management Department Policy on Makeup Time and PTO | | |
| PX29 – D91 | 2/27/02 Organizational Chart showing Choma supporting Kaplan | | |
| PX30 – P11 | CareFirst, Inc, overtime and holiday work policy | Objection. Document is incomplete (missing page). | Will be supplied |
| PX31 - ??? | 4/9/02 e-mails from | Objection. | Will be supplied |

| | | | |
|---|---|---|---|
| | Zakutny to Kaplan re: Zakutny taking a brief lunch before her Dr. appointment so she can rest | Relevancy (402); document not sufficiently identified in accordance with local rules. | |
| PX32 - P388 | 5/17/02 e-mail from Kaplan to Choma re: mailings going to incorrect doctors | Objection. Relevancy (402) | Relevant, bates # supplied |
| PX33 – D357 | 5/22/02 e-mail from Kaplan to Edith re: Book Fair and financial planning seminar | | |
| PX34 – D1335 | 5/23/02 e-mail from Human Resources, Renita Roane, re: Register Today for the Financial Planning Seminars | | |
| PX35 – D244 | 6/25/02 e-mails between Kaplan and Edith re: tracking all licences for CM10 | | |
| PX36 – D76 | 7/29/02 e-mails between Yvonne Locker and Dave Martin re: treatment of Edith - Age discrimination | Objection. Relevancy (402); Confusing and Prejudicial (403); Will be subject to Motion in Limine | Relevant |
| PX37 – P1792 | 8/7/02 e-mail from Donna May to Edith re: BCBS does not provide any guarantees of employment, Edith asked if she had to move | | |
| PX38 – P746 | 8/19/02 e-mails between Kaplan and Choma re: setting up a meeting with Medical Management | | |

| PX39 – D249 | 8/21/02 e-mails between Kaplan and Edith re: meeting on 8/23/2002 | | |
|---|---|---|---|
| PX40 – P725 | 10/2/02 e-mail from Kaplan to Edith re: setting up a conference call | | |
| PX41 – D90 | 10/3/02 dated Organizational Chart - Choma supporting Sweeney, Carpenter supporting Kaplan | | |
| PX42 – D512 | Associate Relations Complaint Intake Form, Choma lodging complaint against Kaplan - dated 10/29/02 | | |
| PX43 – D75 | Survey of Paul Kaplan by Associates of BCBS - dated 11/1/02 | Objection. Relevancy (402); Confusing and Prejudicial (403); Hearsay (802); Will be subject to Motion in Limine | Relevant |
| PX44 – D366 | 11/6/02 e-mail from Sweeney to Choma re: Edith needing to make sure that Chris and Pat are at work for her to leave 2 hours early | | |
| PX45 – D733 | 11/9/02 e-mail from Donna May to Edith re: getting Edith's performance reviews from 1998-2002 from Edith | | |
| PX46 – D513 | 11/11/02 Memo from Donna May to File re: Edith's complaint of discrimination against Kaplan | | |
| PX47 – P734 | 11/19/02 e-mail from Kaplan to Choma re: | | |

| | | | |
|---|---|---|---|
| | becoming the owner of the external appeals process | | |
| PX48 – P712 | 11/22/02 e-mail from Edith to Kaplan re: Credentialing Subcommittee minutes and dictation | | |
| PX49 – D60 | Charges filed with the EEOC and DDOL by Edith - dated 11/25/02 | Objection. Relevancy (402); unnecessarily cumulative and Prejudicial (403) | Relevant |
| PX50 – D918 | Edith's Performance Review for 2002 | | |
| PX51 – D177 | 1/6/03 Out of office reply from Sweeney not listing Edith to call for assistance | | |
| PX52 – D928 | 1/14/03 e-mail from Sweeney to Donna May re: disagreement with Edith about Performance Review and Sweeney consulting with Pat Carpenter on Edith's responsibilities | | |
| PX53 – D481 | 1/15/03 Letter from Holt to Cutler re: Position statement to the DDOL | Objection. Relevancy (402); Waste of Time and Prejudicial (403); Hearsay (802) | Relevant, non-hearsay |
| PX54 – D223 | 1/22/03 e-mails between Carpenter and Edith re: new cost centers and who Edith reports to | | |
| PX55 – P727 | 1/22/03 e-mail from Kaplan to Edith re: pulling the file on Alex W. Jerome, MD | | |
| PX56 – D248 | 2/20/03 e-mail from Kaplan to Edith re: 3x3 reports | | |
| PX57 – P764 | 2/21/03 e-mail from | Objection. | Relevant, non- |

| | | | |
|---|---|---|---|
| | Stacey Haddock to PK, PC and EC re: letters to be sent out | Relevancy (402); Confusing and Prejudicial (403); Hearsay (802) | hearsay |
| PX58 – D247 | 2/24/03 e-mails between Kaplan and Edith re: sending out letters with % compliance for each facility | | |
| PX59 – P394 | 3/5/03 Organizational Chart for Medical Management with Carpenter assisting Kaplan and Choma assisting Sweeney | | |
| PX60 – D246 | 3/5/03 e-mail from Kaplan to Edith re: sending a certified letter | | |
| PX61 – P730 | 3/13/03 e-mail from Kaplan to Edith re: sending certified letters | | |
| PX62 – D178 | 3/17/03 e-mail from Sweeney to various recipients re: NCQA preparations | | |
| PX63 – D245 | 4/2/03 e-mail from Kaplan to Edith and Carpenter re: blank tapes for dictation | | |
| PX64 – D228 | 4/14/03 Out of office reply from Sweeney not listing Edith to call for assistance | | |
| PX65 – D960 | 4/23/03 e-mail from Sweeney to Choma re: external appeals process | | |
| PX66 – D173 | Medical Management Department Policy on Makeup Time and PTO | | |

| | | | |
|---|---|---|---|
| PX67 – D237 | 5/9/03 e-mail from Kaplan to Edith re: faxing a Dr. medical records guidelines | | |
| PX68 – D238 | 5/9/03 e-mail from Kaplan to Edith re: letters to be sent with Corp. Comm approval | | |
| PX69 – D240 | 5/22/03 e-mail from Edith to Kaplan re: completed dictation letters | | |
| PX70 – D251 | 5/22/03 e-mail from Edith to Kaplan re: final version of UM Director letter for all hospitals | | |
| PX71 - P744 | 5/30/03 e-mail from Kaplan to Edith re: UM Director letter is fine to send out | | |
| PX72 – D962 | 6/3/03 e-mail from Sweeney to Donna May re: Edith being out of the office from 5/23-5/30 and called out on 6/2.  DS thinks she needs a Dr. note | | |
| PX73 – D250 | 6/5/03 e-mail from Kaplan to Edith re: letters sent to network PCPs | | |
| PX74 – P718 | 6/12/03 e-mail from Sweeney to PK and EC re: the list of practicioners who should receive each letter | | |
| PX75 – P729 | 6/16/03 e-mail from Kaplan to Edith re: making a trip to see a Dr. to review charts | | |
| PX76 – P768 | 6/18/03 e-mail from Kaplan to Edith re: | | |

| | | | |
|---|---|---|---|
| | letter to Dr. Abboud | | |
| PX77 – P726 | 6/27/03 e-mail from Kaplan to Edith re: dictation with changes | | |
| PX78 – P728 | 7/1/03 e-mail from Kaplan to Edith re: dictation changes and distribution | | |
| PX79 – P631 | 7/14/03 e-mail from Edith to Slaysman re: Sweeney telling EC to take PTOU instead of PTO for tests and surgery with cardiologist | | |
| PX80 – D242 | 7/16/03 e-mail from Kaplan to Edith re: 3x3 reports | | |
| PX81 – D735 | 7/16/03 e-mails between Donna May and Edith re: whether EC should take PTOU time or PTO time for test and surgery with cardiologist | | |
| PX82 – D19 | 7/17/03 e-mail from Sweeney to Edith re: treating time from 7/9 as scheduled time, however going forward she needs 24 hour notice for scheduled appointments and if it will become frequent, she should contact Kemper re: intermediate FMLA | | |
| PX83 – P1347 | 7/17/03 e-mail from Edith to Sweeney re: telling her a day in advance that she had a dr. appointment on 7/9 | | |

| PX84 – D229 | 7/18/03 Out of office reply from Sweeney not listing Edith to call for assistance | | |
|---|---|---|---|
| PX85 – D243 | 7/24/03 e-mail from Kaplan to Edith re: 3x3 reports | | |
| PX86 – P997 | 7/25/03 e-mail from Zakutny to Choma re: Pat asking EC to do mail and CZ not having time to do the mail, please do it. Pat not signed out on the calendar | | |
| PX87 – P769 | 8/25/03 e-mail from Kaplan to Edith re: scheduling a meeting with Sweeney, PK and George Keyes of Labcorp | | |
| PX88 – P774 | 8/26/03 e-mails between Joan Koenig at CareFirst and Edith re: setting up Chiropractic/Peds meeting | | |
| PX89 – P1872 | 10/28/03 e-mail from Edith to Kaplan re: dictated letters | | |
| PX90 – D370 | 10/30/03 e-mails between Edith and Kaplan re: dictated letters and password protecting those documents | | |
| PX91 – P743 | 10/30/03 e-mail from Kaplan to Edith re: electronic copy of letter to Dr. Perez | | |
| PX92 – D469 | 10/31/03 Letter from DDOL re: Notice of Reasonable Cause Finding | Objection. Relevancy (402); Cumulative; Confusing and Prejudicial (403); Hearsay (802); Will | Relevant, non-hearsay |

| | | be subject to Motion in Limine | |
|---|---|---|---|
| PX93 – P763 | 11/17/03 e-mail from Kaplan to Edith re: a certified letter | | |
| PX94 – P695 | Job posting for supervisor of medical management administrative assistants | Objection. Relevancy (402); Hearsay (802) | Relevant, non-hearsay |
| PX95 – D1183 | PTO Report Utilization as of 12-1-03 for Choma & Zakutny listing Carpenter as Report To person | | |
| PX96 – D397 | Edith's Performance Review for 2003 | | |
| PX97 – D466 | 1/9/04 DDOL letter to Holt re: settlement demands of Choma | Objection. Relevancy (402); Prejudicial (403); inadmissible settlement discussions (408) | Relevant |
| PX98 – P778 | 1/13/04 e-mail from Kaplan to Choma re: needing dictaphone tapes | | |
| PX99 – P776 | 1/15/04 e-mails from Choma to Kaplan re: letter to Dr. Rosenblatt, put file where told by Pat C. | | |
| PX100 – P1538 | 1/15/04 e-mails from Edith, Pat Carpenter and John Ross re: using a CPAC member for an appeal and PC asking EC if they have | | |
| PX101 – D368 | 1/15/04 e-mail from Kaplan to Choma re: 3x3 report | | |
| PX102 – D474 | 1/29/04 Letter from Holt to EEOC re: Substantial Weight | Objection. Relevancy (402); Hearsay (802) | Relevant, non-hearsay |

| | | | |
|---|---|---|---|
| | Review of Reasonable Cause Finding | | |
| PX103 – D982 | 2/6/04 e-mails between Sweeney and Choma re: having an appointment on 2/9 and wants to make up the time | | |
| PX104 – D983 | 2/12/04 e-mails between Choma and Sweeney re: taking a PTO day and DS asking if she has made arrangement to cover the nurses letters since Pat is also out | | |
| PX105 – D988 | 3/29/04 e-mails between Sweeney and Choma re: having an appointment on 3/30 and wants to make up the time | | |
| PX106 – P1327 (Sweeney 7) | 4/5/04 Out of office reply from Sweeney not listing Edith to call for assistance | | |
| PX107 – D989 | 4/5/04 e-mails between Sweeney and Choma re: requesting off on 4/9 and 4/12 but CZ out on 4/9 so EC will only take 4/12 | | |
| PX108 – D363 | 4/6/04 e-mails between Sweeney and Choma: PTO on 5/28 and 6/1 and DS asking if CZ and PC will be in those days | | |
| PX109 – P691 | 4/23/04 e-mail from Edith to Kaplan re: | | |

| | | | |
|---|---|---|---|
| | contacting Dr. Gloth re: appeals | | |
| PX110 – P694 | 4/26/04 e-mail from Kaplan to Edith re: external appeal letter to Dr. Brave | | |
| PX111 – D362 | 4/30/04 e-mails between Sweeney and Choma re: taking PTO on 7/2 and 7/6 and DS asking if Pat and Chris are going to be at work those days | | |
| PX112 – D371 | 5/6/04 e-mail from Carpenter to Choma and Zakutny re: PC taking 2 or 3 weeks off in July and also 5/7 | | |
| PX113 – D995 | 5/6/04 e-mails between Edith and Sweeney re: Edith staying until 9pm to key in the HEDIS data and Sweeney asking why, it was going to be EC's priority for today | | |
| PX114 – P683 | 5/19/04 note from Kaplan to Edith re: having the UM nurses enter a final determination into script | | |
| PX115 – P685 | 5/25/04 e-mail from Kaplan to Edith re: getting address for contact at Christiana Care | | |
| PX116 – P670 | 6/14/04 e-mail from Kaplan to Edith re: getting address for Dr. Rosen | | |
| PX117 – D998 | 6/25/04 e-mails between Edith and | Objection. Relevancy (402); | Relevant, non-hearsay |

| | | | |
|---|---|---|---|
| | Peg Bell re: Peg telling EC that she deserves a medal for being such a great help with merge file for letters for Peg. | Confusing and Prejudicial (403); Hearsay (802) | |
| PX118 – D999 | 7/6/04 e-mail from Pat Carpenter to Edith and Zakutny re: being out of the office and duties for Edith and Chris to complete in her absence | | |
| PX119 – D524 | Service Award order form for Edith for 15 years of service with Pat Carpenter listed as her immediate supervisor | | |
| PX120 – D1004 | 8/18/04 e-mail from Pat Carpenter to Edith and Zakutny re: being out of the office and duties for Edith and Chris to complete in her absence | | |
| PX121 – P532 | Christiana Care Health Services note excusing Choma from work until 8/23/04 dated 8/20/04 | Objection.  Hearsay (802) | Non-hearsay |
| PX122 – D1007 | 8/24/04 e-mails between Sweeney and Choma re: OT for time when Pat was on vacation (7/8-7/23) and DS saying that she will be paid despite the fact that she did not obtain approval.  Also states that EC will not be able to use lunch for | | |

| | | | |
|---|---|---|---|
| | late arrivals, early departures or doctor appointments, need to use PTO time, will be written up for working OT w/o permission (2nd instance in month) | | |
| PX123 – P1597 | 8/25/04 e-mails between Sweeney and Choma re: not taking lunch on 8/23 because of needing to type a certain amount of letters with 1 hand by end of day | | |
| PX124 – D532 | 8/25/04 Memo from Sweeney to Choma re: being written up for unscheduled OT, worked through lunch on 8/23/04 | | |
| PX125 – P108 | 8/25/04 Letter from Dr. Hilton (Edith's PCP) stating that EC will be seeing Dr. Patterson for her wrist injury but on vacation, until then he states that EC should not do any tasks that involve the use of her right hand | Objection.  Hearsay (802) | Non-hearsay |
| PX126 – D1012 | 8/27/04 e-mail from Choma to Kaplan, Sweeney and Carpenter re: tasks that need to be completed during her STD | | |
| PX127 – P109 | 8/30/04 Memo from CareFirst BCBS re: Edith's current work restrictions and management cannot meet the stated job | | |

| | | | |
|---|---|---|---|
| | limitations | | |
| PX128 – P107 | 8/31/04 Letter from MetLife to Edith re: claim for disability approved from 8/30/04 through 9/19/04. | | |
| PX129 – P115 | 9/16/04 Note from Orthopaedic Specialists re: returning to light duty on 9/20/04, no heavy lifting | Objection.  Hearsay (802) | Non-hearsay |
| PX130 – P2002 | 9/20/04 e-mail from Sweeney to Edith re: 3x3 letters not completed, the nurses begin using new letters today | | |
| PX131 – D1014 | 9/20/04 e-mail from Sweeney to Edith re: the file now has 20 letters that were not completed | | |
| PX132 – D1016 | 9/28/04 e-mail from Carpenter to Edith re: removing Encl: from the new letters so that it is not on the final letters | | |
| PX133 – D846 | 10/13/04 Note from Orthopaedic Specialists re: Edith needing to take 10 minute breaks every 2 hours for stretching hand | | |
| PX134 – D1017 | 10/14/04 e-mail from Sweeney to Edith re: arriving at 8:15 and working until 4:30; taking an extra 15 min at lunch, therefore she needs to indicate 30 min of PTO for a full day. | | |

26

| | Told to contact MetLife for intermittent FMLA for stretching exercises | | |
|---|---|---|---|
| PX135 – D21 | 10/14/04 e-mail from Sweeney to Edith re: Edith coordinating a meeting and allegedly not checking with Kaplan or Panzer for availability | | |
| PX136 – P1680 | 10/15/04 e-mails between Edith, Pat Carpenter and Rubina Pak re: Edith returning to work on 9/20/04 | | |
| PX137 – D824 | Cover sheet showing Edith being timed typing letters | Objection. Confusing and Prejudicial (403) unless entire document is entered into evidence. | Relevant; no objection to admission of entire document |
| PX138 – D1020 | 10/15/04 e-mails between Sweeney and Edith re: coming in at 8:10 and told Sweeney that she would take this off her OT and Sweeney said OK.  Then Sweeney replying that she cannot use OT from one day to over for an underrage on another day | | |
| PX139 – D16 | 10/15/04 e-mail from Sweeney to Choma re: not stopping by at the end of the day to give status of letters and DS being disappointed. Error rate too high, using 2 | | |

| | font sizes | | |
|---|---|---|---|
| PX140 – D1024 | 10/22/04 e-mail from Sweeney to May re: Edith submitting her time sheet and on 10/13 she did not arrive until 10:30 and indicated that she worked 1 hour and 15 minutes of OT. DS authorized 3 hours of OT to get caught up on letters. EC stated to DS that she worked through lunch, DS wants to take the next step or does she have to wait for the PIP.  EC also told DS that she is harassing her.  Wants to give her the PIP. | | |
| PX141 – P499 | Edith files Retaliation Claim with the DDOL and EEOC - dated 10/22/04 | Objection. Relevancy (402); Unnecessarily cumulative and Prejudicial (403). | Relevant |
| PX142 – D1026 | 10/25/04 e-mail from Sweeney to Choma and May re: confirming that EC has spoken with MetLife re: FMLA for hand exercises | | |
| PX143 – D848 | Medical Note from Lancaster Pike Center re: Edith being out of work from 10/25/04 to 10/26/04 due to vertigo | Objection.  Hearsay (802) | Non-hearsay |
| PX144 – D847 | Medical Note from Lancaster Pike Center re: Edith's restrictions from 10/26/04 to 11/2/04 | Objection.  Hearsay (802) | Hearsay |

DB01:2627234.2                                            052305.1028

| | | | |
|---|---|---|---|
| | no activities that cause dizziness or vertigo | | |
| PX145 – D750 | 10/26/04 e-mail from Sweeney to Choma and May re: needing a list of activities that cause Edith vertigo | | |
| PX146 – D751 | 10/27/04 e-mails between Sweeney and Choma re: needing a list of what triggers her vertigo and EC telling her anything can trigger vertigo, she is not able to pinpoint a certain activity. | | |
| PX147 – D753 | 10/27/04 e-mails between Susan Slaysman and Choma re: retirement because of being harassed | | |
| PX148 - P1620 | 10/27/04 meeting notification for Sweeney and May re: PIP for Edith best left for the end of the day and she changed the dates to give her a month to comply | | |
| PX149 – D414 & D764 | Associate Relations Complaint Intake Form, Choma lodging complaint against Sweeney for discrimination - dated 10/27/04 | | |
| PX150 – D754 | Statement from Sweeney taken by May re: complaint by Edith - dated 10/27/04 | | |
| PX151 – D767 | Findings of investigation of | | |

|  | | | |
|---|---|---|---|
|  | Choma complaint against Sweeney, PIP will be administered - 10/28/04 | | |
| PX152 – D776 | 10/29/04 E-mail from Kaplan to Sweeney and May re: meeting about Edith's charges of Harassment and Discrimination | | |
| PX153 – D380 | Performance Improvement Plan for Choma | | |
| PX154 – D776 | 10/29/04 e-mail from Kaplan to May re: allegations brought against BCBS DE of harrassment and discrimination by Choma | | |
| PX155 – P42 | 11/1/04 e-mails between Sweeney and Choma re: checking in and DS asking what she did from 7:50-7:56 | | |
| PX156 – D1043 | 11/1/04 e-mail from Edith to Sweeney re: having a Dr. appointment at 4:30 and needs to leave at 4pm | | |
| PX157 – D1044 | 11/1/04 e-mail from Sweeney to Choma re: response to EC to either cut down lunch time or use PTO time | | |
| PX158 – D849 | Associate Profile of Edith naming Pat Carpenter as her Supervisor - dated 11/1/04 | Objection. Relevancy (402); Hearsay (802) | Relevant, non-hearsay |
| PX159 – P117 | Consultation Report from Dr. Teixido re: Meniere's disease and vertigo - dated | Objection. Relevancy (402); Hearsay (802) | Relevant, non-hearsay |

| | 11/1/04 | | |
|---|---|---|---|
| PX160 – D367 | 11/2/04 e-mails between Sweeney and Edith re: checking in at 8:02 and DS not receiving e-mails yesterday when EC took lunch or left for the day | | |
| PX161 – D1046 | 11/2/04 e-mail from EC re: teleconference on 11/4/04 and to contact Joan Beaudry, cause EC will be out and Sweeney replied asking where will EC be, she did not recall seeing a request for PTO. | | |
| PX162 – D1048 | 11/15/04 e-mail from Sweeney to May re: Edith's time out of the office since Pat returned from vacation on 7/22 | | |
| PX163 – P1789 | 1/4/05 E-mail from Edith to Phyllis Feibus re: interest rate for 2nd quarter 2005 is 4.89% which means the lump sum will be higher as the interest rate is lower. | Objection. Relevancy (402) | Relevant |
| PX164 – P58 | Exit Interview of Edith - dated 2/15/05 | | |
| PX165 – D459 | Determination from EEOC - 17c-2003-00104 - dated 2/24/05 | Objection. Relevancy (402); Waste of Time and Prejudicial (403); Hearsay (802); Will be subject to Motion in Limine | Relevant |
| PX166 – D299 | Final Determination and Right to Sue from the DDOL re: | Objection. Relevancy (402); Waste of Time and |

| | | | |
|---|---|---|---|
| | case no. 04100795 - dated 3/9/05 | Prejudicial (403); Hearsay (802); Will be subject to Motion in Limine | |
| PX167 – D378 | 4/6/05 Letter from Dr. Tait re: EC's mental state and capacity | Objection. Relevancy (402); Prejudicial (403); Hearsay (802); Inadmissible opinion testimony (702-703); Will be subject to Motion in Limine. | Relevant, non-hearsay |
| PX168 – D435 | Counterproposal to Edith from Holt to DDOL - dated 4/27/05 | Objection. Relevancy (402); Prejudicial (403); inadmissible settlement discussions (408); Hearsay (802) | Relevant, non-hearsay |
| PX169 – P1696 | Memo to Choma from Jen Wildesen re: retirement estimate (pay only increased an average of 1.4% per year since 2001) | Objection. Relevancy (402); Waste of Time and Prejudicial (403) | Relevant |
| PX170 – D389 | Position statement of BCBS to DDOL - dated 7/14/05 | Objection. Relevancy (402); Waste of Time (403); Hearsay (802) | Relevant, non-hearsay |
| PX171 – D276 | Determination from EEOC - 17c-2005-00043 - dated 11/10/05 | Objection. Relevancy (402); Unnecessarily cumulative and Prejudicial (403); Hearsay (802); Will be subject to Motion in Limine. | Relevant, non-hearsay |
| PX172 – Tait 1 | 3/20/07 letter from Diane Tait re: Treatment summary of Edith Choma | Objection. Relevancy (402); Prejudicial (403); Hearsay (802); Inadmissible opinion testimony (702-703); Will be subject to Motion in Limine. | Relevant, non-hearsay |

| PX173 – Tait 2 | Visit notes from Dr. Tait re: Edith Choma | Objection. Relevancy (402); Prejudicial (403); Hearsay (802) | Relevant, non-hearsay |
|---|---|---|---|
| PX174 – Minnehan 1 | Economic Analysis by Robert Minnehan, Ph.D. | Objection. Hearsay (802); Inadmissible opinion testimony (702-703) | Non-hearsay |
| PX175 | Dr. Blumberg's expert report on Edith Choma (Psychiatric Eval) | | |
| PX176 – Choma 2 & 3 | Job descriptions - Grade 7 and Grade 8 Assistants | Objection. Relevancy (402); Hearsay (802) | Relevant, non-hearsay |
| PX177 - P381 | E-mail from Eileen Brown to Jane Israel re: duties performed by Edith for Eileen Brown | Objection. Relevancy (402) | |
| PX178 – P650 | Summary of Supervisor of Departmental Administrative Assistants | Objection. Relevancy (402) | Relevant |
| PX179 – D222 | Organizational Chart that shows Edith reporting to Carpenter | Objection. Relevancy (402) | Relevant |
| PX180 – P2176 | Pictures of Edith Choma's cubicle after move to QI Department | Objection. Relevancy (402) | |
| PX 181 – P542 | Edith's 1998-2005 tax returns | | |

Plaintiff reserves the right to designate demonstrative exhibits after consultation with defendant and approval of the Court.

**Defendant's Exhibits**

| DX | Description | Bates # | Objection | Response |
|---|---|---|---|---|

| # | | | | |
|---|---|---|---|---|
| 1 | HR Policy on Sexual Harassment effective 12/1/98 (reviewed 7/1/03) | D00011 | Relevance | Relevant. Shows defendant's good faith effort to prevent discrimination. |
| 2 | Handout re: Handle confidential and sensitive information for CMO and Management | D00094 | Relevance | Relevant. Details job functions of administrative assistant which are directly at issue. |
| 3 | Performance Evaluation of May 16, 1999 | D83 | | |
| 4 | Email from Choma to Kaplan dated April 21, 1999 | D97 | | |
| 5 | NCQA Agreement for MCO Accreditation Survey | P0867 | Relevance | Relevant. NCQA procedures directly at issue. |
| 6 | Email from Choma to Kaplan dated July 1, 1999 | P2091 | | |
| 7 | NCQA Rules on Falsified Documents and Fraudulent Information (signed July, 1999) | P0882 | | |
| 8 | Personnel Record Change dated July 14, 1999 | D82 | | |
| 9 | Personnel Record Change dated August 20, 1999 | D586 | | |
| 10 | Personnel Record Change dated October 21, 1999 | D587 | | |
| 11 | Performance Evaluation of Carpenter dated February 1, 2000 | D00143 | | |
| 12 | Summary of Meeting with Choma March 3, 2000 | D560 | | |
| 13 | Personnel Record Change dated May 23, 2000 | D0588 | | |
| 14 | Performance Evaluation of Choma dated May 16, 2000 | D645 | | |
| 15 | Performance Evaluation of Choma dated May 31, 2001 | D653 | | |
| 16 | Department Policy on Makeup Time Paid Time Off (1/02) | P7 | | |
| 17 | Personnel Record Change dated June | D0589 | | |

| | | | | |
|---|---|---|---|---|
| | 4, 2001 | | | |
| 18 | **Medical Management hierarchy chart (2/27/02)** | **P392** | | |
| 19 | **Departmental Guidelines on Makeup Time and Paid Time Off dated May 20, 2002** | **D173** | | |
| 20 | **Emails between May and Choma dated August 6 to August 7, 2002** | **P1792** | | |
| 21 | **Emails between Kaplan and Choma dated May 22, 2002** | **D357** | | |
| 22 | **Note to Choma with Picture of New Workstation dated September 4, 2002** | **P2168** | | |
| 23 | **Medical Management hierarchy chart (10/3/02)** | **P393** | | |
| 24 | **Complaint Intake Form (10/29/02)** | **D00148** | | |
| 25 | **Memorandum from Donna May dated November 11, 2002 (re: 9/29/02)** | **D149** | | |
| 26 | **Memorandum from Donna May dated November 11, 2002 (re: 10/29/02)** | **D0696** | | |
| 27 | **Memorandum from Donna May dated November 11, 2002 (re: 11/5/02)** | **D0698** | | |
| 28 | **Memorandum from Donna May dated November 11, 2002 (re: 11/6/02)** | **D0700** | | |
| 29 | **Performance Assessment January 1, 2002 to December 31, 2002** | **P620** **D898** | | |
| 30 | **Email from Sweeney to May dated January 14, 2003** | **D00928** | | |
| 31 | **Email from Sweeney to Choma dated April 23, 2003** | **D00960** | | |
| 32 | **Emails between Sweeney and Choma dated June 9, 2003 to June 17, 2003** | **D00963** | | |
| 33 | **Email from May to Choma dated July 16, 2003** | **D735** | **Relevance** | **Relevant to show discussions concerning time off procedures put at issue by Plaintiff** |
| 34 | **Email from Sweeney to Choma dated July 17, 2003** | **D00966** | **Relevance** | **Relevant to show discussions concerning time off procedures put at issue by Plaintiff** |
| 35 | **Performance Improvement Plan of** | **D1231** | | |

| | | | | |
|---|---|---|---|---|
| | **Zakutny dated July 23, 2003** | | | |
| 36 | **Performance Assessment of Choma dated January 1, 2003 to December 31, 2003** | **D397** | | |
| 37 | **Email from Carpenter to Choma dated February 20, 2004** | **D984** | | |
| 38 | **Emails between Sweeney and Choma, Kaplan, Carpenter dated February 25, 2004 to February 26, 2004** | **D985** | | |
| 39 | **Emails between Sweeney and Choma dated May 6, 2004** | **D995** | | |
| 40 | **Email from Carpenter to Choma, Zakutny dated July 6, 2004** | **D999** | | |
| 41 | **Typing /Proofing forms** | **D783** **D784-845** | **Entire Exhibit Should be Produced** | **All forms produced.** |
| 42 | **Emails between Sweeney and Choma dated July 29, 2004** | **D0360** | | |
| 43 | **Emails between Choma and Sweeney dated August 24 to August 25, 2004** | **D1008** | | |
| 44 | **Memo to Choma from Sweeney dated August 25, 2004** | **D749** | | |
| 45 | **Memo to Choma from Quinn dated August 30, 2004** | **P109** | | |
| 46 | **MetLife correspondence to Choma dated August 31, 2004** | **P107** | | |
| 47 | **Orthopaedic Specialists Note dated September 16, 2004** | **P115** | | |
| 48 | **Emails between Sweeney and Choma dated August 27 to September 20, 2004** | **D1014** | | |
| 49 | **Handwritten Note from Sweeney to Carpenter re: request for help with letters** | **P1282** | **Foundation** **Relevance** | **Foundation will be laid by Sweeney and Carpenter. Relevant to issue of typing appeal letters at issue.** |
| 50 | **Computer Screen Shot and attached documents** | **D890** | **Foundation** **Hearsay** **Relevance** | **Foundation will be laid by Sweeney. Relevant to show where her documents were kept in files that Choma accessed.** |

| 51 | **Choma Broken Wrist Summary dated August 20, 2004 to October 27, 2004** | **D1029** | | |
|---|---|---|---|---|
| 52 | **Blank Typing Form for Letters Generated** | **D784** | **Redundant to DX 41** | |
| 53 | **Email from Sweeney to Choma dated October 15, 2004** | **D01022** | | |
| 54 | **Email from Sweeney to May dated October 22, 2004** | **D759** | | |
| 55 | **Email from Sweeney to Choma re: Intermittent FMLA Application dated October 25, 2004** | **P1306** | | |
| 56 | **Christiana Care Services Medical Certificate with restrictions dated October 26, 2004** | **D847** | | |
| 57 | **Christiana Care Services Medical Certificate dated October 26, 2004** | **D848** | | |
| 58 | **Email between Sweeney and Choma dated October 26 and October 27, 2004** | **D751** | | |
| 59 | **Email from Slaysman to Choma dated October 27, 2004** | **D753** | | |
| 60 | **Choma Complaint Intake Form dated October 27, 2004** | **D0414** | | |
| 61 | **Associate Relations Intervention Confidential Statement dated October 27, 2004** | **D0418** | | |
| 62 | **Associate Relations Complaint Intake form (unsigned, with notation dated October 28, 2004)** | **D764** | | |
| 63 | **Associate Relations Intervention Follow-Up Meeting dated October 27, 2004** | **D0767** | | |
| 64 | **Performance Improvement Plan Memorandum to Choma from Sweeney dated October 29, 2004** | **D380** | | |
| 65 | **Emails between Sweeney and Choma dated November 1, 2004** | **P042** | | |
| 66 | **Emails from Smith to Carpenter dated November 3, 2004** | **D1047** | **Relevance** | **Relevant. Shows Plaintiff's job functions.** |
| 67 | **Correspondence to Choma from Linda** | **P0619** | **Should be P618?** | **Relevant. Shows** |

| | | | |
|---|---|---|---|
| | Evans dated December 23, 2004 | | Relevance | pension benefit calculation put at issue by Plaintiff. |
| 68 | Email from Choma to May dated January 14, 2005 | D851 | Relevance | Relevant. Shows pension benefit calculation put at issue by Plaintiff. |
| 69 | Paycheck Information of Choma dated January 21, 2005 | P608 | Should be 607-08? Relevance | Relevant. Shows payroll payments put at issue by Plaintiff. |
| 70 | HR Policy on Attendance, Absenteeism, and Punctuality dated November 1, 2003 (revised January 1, 2005) | D859 | | |
| 71 | Retirement Program Worksheet dated May 4, 2005 | P1705 | | |
| 72 | Memo to Choma from Jen Wildesen re: Retirement Estimate dated May 10, 2005 | P0614 | Should be 613? Relevance | Relevant. Shows pension benefit calculation put at issue by Plaintiff. |
| 73 | Choma's modified Work Assignment | P1552 | Foundation Relevance | Foundation will be established by several witnesses. Relevant to show Plaintiff's duties. |
| 74 | Performance Assessment of Zakutny dated January 1, 2003 to December 31, 2003 | D01106 | | |
| 75 | Performance Evaluation Form of Zakutny dated October 15, 2001 | D01128 | | |
| 76 | Email from Human Resources of May 23, 2002 re: Register for Financial Planning Seminars | D01335 | | |
| 77 | Email between Zakutny and Paul dated July 26, 2000 | Zakutny dep ex 9 | Relevance | Relevant. Plaintiff's relationship with comparator employee directly at issue. |
| 78 | Carpenter earnings and benefits (2000 to 2004) | D01235; D01239 | Relevance | Relevant. Compensation and benefits of comparator employee at issue. |
| 79 | Choma earnings and benefits (2000 to | D01236; | | |

| | | | | |
|---|---|---|---|---|
| | 2004) | D01241 | | |
| 80 | **Zakutny earnings and benefits (2000 to 2004)** | **D01237; D01238** | **Relevance** | **Relevant. Compensation and benefits of comparator employee directly at issue.** |
| | | | | |
| | | | | |

**DEFENDANT RESERVES THE RIGHT TO USE AS AN EXHIBIT ANY OR ALL OF THE EXHIBITS DESIGNATED BY PLAINTIFF AS EXHIBITS (SUBJECT TO THE OBJECTIONS FILED BY DEFENDANT), ANY PLEADING OR WRITTEN DISCOVERY RESPONSE OR ANY DEPOSITION TRANSCRIPT OR PORTION THEREOF, SUMMARY EXHIBITS AS PROVIDED FOR UNDER FED. R. EVID. 1006, DEMONSTRATIVE OR ILLUSTRATIVE EXHIBITS, AND SUCH EXHIBITS AS ARE NECESSARY FOR PURPOSES OF REBUTTAL. DEFENDANT ALSO RESERVES THE RIGHT TO ENLARGE FOR TRIAL ANY AND ALL EXHIBITS (OR PORTIONS THEREOF).**

### SCHEDULE (6)(B)

### DEFENDANT'S DEMONSTRATIVE EVIDENCE*

| DX # | Description |
|---|---|
| A | Key Players |
| B | Chronology of Events |
| C | Blow-up of Admitted Exhibits |
| D | Legal Framework— ADA and Age Discrimination |
| E | Deposition Transcript Excerpts |
| F | Any other courtboards or PowerPoint slides |

*Each demonstrative exhibit to be presented via courtboard or PowerPoint slide(s)

(7)    The names of all witnesses a party intends to call to testify either in person or by deposition at the trial and the specialties of experts to be called as witnesses.

**Plaintiff's Witnesses:**

| Expert Witnesses | Objection | Response |
|---|---|---|
| Robert Minnehan, Ph.D. | | |
| Diane H. Tait | Objection.  Not qualified under *Daubert*.  Insufficient | Will respond to Motion in Limine |

| | | |
|---|---|---|
| | disclosures under Rule 26. Subject to Motion in Limine. | |
| Dr. Robert L. Witt | Objection. Not qualified under *Daubert*. Insufficient disclosures under Rule 26. Subject to Motion in Limine. | |

| Witnesses | Objection | Response |
|---|---|---|
| Plaintiff, Edith Choma, who can be contacted through her attorney, Herbert W. Mondros, Margolis Edelstein, 750 Shipyard Drive, Suite 102, Wilmington, DE 19801, 302-888-1112. | | |
| Joseph Choma, Ex-Husband to Plaintiff who can be contacted through her attorney, Herbert W. Mondros, Margolis Edelstein, 750 Shipyard Drive, Suite 102, Wilmington, DE 19801, 302-888-1112. | Objection. Witness not identified in Rule 26 disclosures or answer to interrogatories. | |
| Paul A. Kaplan, M.D., Vice President of Network and Medical Management and Chief Medical Officer at Blue Cross Blue Shield of Delaware | | |
| Deborah M. Sweeney, Director of Quality Improvement at Blue Cross Blue Shield of Delaware | | |
| Timothy J. Toole, Director of Behavioral Health at Blue Cross Blue Shield of Delaware | | |
| Christine Zakutny, Administrative Assistant at Blue Cross Blue Shield of | | |

| | | |
|---|---|---|
| Delaware | | |
| Donna May, Human Resources Generalist at Blue Cross Blue Shield of Delaware | | |
| Charlene Blanchard, Audit Rep., at Blue Cross Blue Shield of Delaware | | |
| Yvonne Locker, Audit Rep., at Blue Cross Blue Shield of Delaware | | |
| Patricia Carpenter, Administrative Assistant at Blue Cross Blue Shield of Delaware | | |
| David J. Martin, Ph.D. | | |

Plaintiff reserves the right to call any witness named by Defendant in this matter.


**Defendant's Witnesses:**

Defendant reserves the right to call witnesses in rebuttal who are not listed, if necessary, and to call in the case-in-chief witnesses listed by Plaintiff.

| Witness | Objection | Response |
|---|---|---|
| Dr. Paul Kaplan | | |
| Deborah Sweeney | | |
| Patricia Carpenter | | |
| Donna May | | |
| Vicki Sessoms | | |
| Eileen Brown | | |
| Chris Zakutney | | |
| Theresa Smith | | |
| Yvonne Locker | | |
| Charlene Blanchard | | |

| Barbara Little | | |
|---|---|---|
| Judy Charles | | |
| Peg Bell | | |
| Dr. Neil Blumberg<br>Expert (forensic psychiatry) | | |
| Samuel Kursh<br>Expert (economist) | | |

**(8)     A brief statement of what Plaintiff intends to prove in support of Plaintiff's claims including the details of the damages claimed, or of other relief sought, as of the date of preparation of the draft order.**

1.      Plaintiff Edith Choma ("Edith") began her employment with Defendant, Blue Cross Blue Shield of Delaware ("BCBSD") in 1989.

2.      In 1995 Edith was diagnosed with Meniere's Disease, an inner ear disease that causes, among other things, hearing loss and vertigo.

3.      In early 2000, Dr. Paul Kaplan became the new Chief Medical Officer at Blue Cross Blue Shield.  Kaplan, a South Africa-born and educated doctor, had been a practicing physician until 1996, when he suffered a serious head injury.  The injury left him with impaired memory that forced him to retire as a practicing physician, and for which he continues to receive disability payments.  The injury also resulted in changes in Dr. Kaplan's personality.

4.      In 1999 Edith became the administrative assistant to Dr. Kaplan.

5.      Dr. Kaplan and Edith worked in the Medical Management Division at BCBSD, which, among other things, advised BCBSD's health insurance subscribers that BCBSD was denying coverage on health insurance claims made by subscribers. Such denials were made in what BCBSD called "Denial Letters."  Dr. Kaplan was (and is) the official at BCBSD who makes the ultimate decision as to whether a particular claim is

denied.  Edith was the BCBSD employee who was responsible for typing the Denial

Letters.

6.       In addition to having Edith draft Denial Letters, Dr. Kaplan

required Edith to take dictation.  Dr. Kaplan would dictate onto microcassettes, and Edith

would transcribe from the microcassettes.  As a result of her impaired hearing, Edith

struggled with the dictation.  Edith advised Dr. Kaplan, who was well-aware of Edith's

hearing disability, that her hearing impairment impeded her ability to take dictation.   Dr.

Kaplan was extremely dissatisfied with the dictation work Edith did for him. There were

other secretaries to whom Dr. Kaplan could have assigned the dictation duties, but Dr.

Kaplan continued to assign dictation to Edith.

7.       In or around July 1999, Dr. Kaplan evaluated Edith's employment

performance for the first time. Kaplan gave Edith a very poor review.  Among other

things, Edith received a poor review for her performance of her dictation duties.

8.       Edith was unhappy with Kaplan's review of her performance.  She

confronted Kaplan about her review.  During their meeting, Kaplan made several

discriminatory and inappropriate statements to Edith.  He told her: (1) "I can't stand the

way you lift up your glasses to see the screen!"; (2) "Maybe it's your Thyroid"; (3)

"Maybe the blood isn't getting to your brain!"; and (4) "You know the saying "Kick the

Dog", that's why I treat you the way I do!"  Although Kaplan denies making these

statements, after their meeting, Edith reported Kaplan to the BCBSD Human Resources

Department.

9.       The Human Resources Department at BCBSD directed Dr. Kaplan

to revise Edith's 1999 Performance Evaluation.  Kaplan was unhappy that Human

Resources had interceded, and he was unhappy that he was directed to change Edith's Performance Evaluation.  Nevertheless, he made the changes, improving Edith's Performance Evaluation.

        10.     In or around September 2, 1999, BCBSD's Human Resources Department contacted Edith to schedule a meeting to discuss the content of her job. Upon completion of that meeting, Edith's position was reevaluated and Edith was promoted from a grade 7 to a grade 8.  Edith was only given a 1% increase for her change in grade.  When Edith protested this meager increase, Kaplan stated to Edith that if it was up to him, she would not have received anything.

        11.     Dr. Kaplan admitted he was unhappy that Edith reported him to Human Resources and that Human Resources had ordered him to make changes to Edith's Performance Evaluation.  Nevertheless, Kaplan testified that he had no grudge against Edith.

        12.     Kaplan, however, admitted to being extremely frustrated with Edith.

        13.     In a leadership meeting after the confrontation over the 1999 performance evaluation, Kaplan told BCBSD managers that he wanted to get rid of Edith because she couldn't hear.

        14.     Tim Toole, then and still Director of Behavioral Health at BCBSD testified: "My recollection is [Dr. Paul Kaplan] said he wished he could get rid of Edith because he said she couldn't hear."  Kaplan admitted that he said that he wanted to get rid of Edith because she couldn't hear, and admitted that he said that because he was frustrated with Edith.

                                           

15.     After the 1999 Performance Evaluation, and indeed, until Edith was forced to retire from BCBSD, Kaplan continued to make Edith do dictation, despite knowing that Edith's disability impeded her ability to do dictation and despite Kaplan's remaining dissatisfied with Edith's dictation work.  In Kaplan's 2000 Performance Evaluation of Edith, he complained that Edith's hearing difficulties sometimes creates [sic] a problem for her to hear words while transcribing dictation.

16.     Ultimately, Kaplan made good on his wish to get rid of Edith because of her hearing.  On or around August 12, 2002, Edith was "demoted" (Plaintiff's word) or "transferred" (Defendant's word), from Administrative Assistant to Medical Director Paul Kaplan to Administrative Assistant to the new Quality Improvement ("QI") Director, Debbie Sweeney.  In connection with that move, Patricia Carpenter, a younger, and non-hearing impaired secretary in the Medical Management Department at BCBSD became Kaplan's secretary.  After the change, instead of reporting directly to BCBSD's Chief Medical Officer, Kaplan, Edith reported to Sweeney, who reported to Kaplan.  Later, in 2003 or 2004, BCBSD changed Edith's direct report to Patricia Carpenter.

17.     When Edith was transferred to the QI Department, to work for Sweeney, the condition of her cubicle was deplorable.  The walls were mismatched, it was much smaller than her previous cubicle and the cubicles of Carpenter and Zakutny, it was covered in dirt and dust mites.  It took about 2 months for BCBSD to replace her cubicle.

18.     After demoting Edith, Kaplan and BCBSD continued to discriminate her and to retaliate against her for complaining to Human Resources and later to the EEOC and Delaware Department of Labor.

DB01:2627234.2                                                                                    052305.1028

19.    Sweeney publicly berated Edith when she returned a half hour late from lunch.  Although four other BCBSD employees were also late, Sweeney singled Edith out for a very public tongue-lashing.

20.    Beginning in 2004, BCBSD experienced a sharp increase in the number of health insurance claims it was denying, and hence a sharp increase in the number of Denial Letters that needed to be typed.  As a result of the increase in denials and Denial Letters, there was also an increase in the number of BCBSD subscribers who appealed BCBSD's denial of benefits.  This caused a sharp increase in the number of "Appeal Letters" BCBSD sent, and Edith was responsible for typing those Appeal Letters, as well as the Denial Letters.  On August 19, 2004, Edith suffered a broken wrist, and went to work with a cast on her right (primary) wrist.  Notwithstanding Edith's broken wrist, Sweeney required Edith to type the Denial and Appeal Letters, and timed Edith to assess the rate at which Edith was typing the Denial and Appeal Letters. Edith typed the Denial and Appeal Letters with one hand.  Sweeney then complained because Edith was not typing the Denial and Appeal Letters quickly enough.   When Edith attempted to work through lunch to type the letters informing the BCBSD subscribers their claims were being denied, Sweeney reprimanded her for working through lunch. When Edith stayed late to get the work done, Sweeney refused to authorize overtime.

21.    On October 22, 2004, Edith filed a complaint with the Delaware Department of Labor and the EEOC complaining of BCBSD's discriminatory treatment. On October 29, 2004, BCBSD placed Edith on a Performance Improvement Plan ("PIP"). Among other things, the PIP (1) set unreasonable expectations for the rate at which Edith would type Denial and Appeal Letters; (2) established Edith's official hours as starting

between 8:00 and 8:30 AM; and (3) required Edith to notify Sweeney when she arrived in the morning, when she left for and returned from lunch and when she departed work in the evening.

22.    On November 1, 2004, the very first day after BCBSD implemented Edith's PIP, Edith arrived in the morning and emailed Sweeney that she had arrived at 7:50 AM. Sweeney responded by email that while Edith had claimed to have arrived at 7:50 AM, Sweeney did not receive the email until 7:56 AM. Sweeney demanded to know what Edith had been doing for the previous six minutes.

23.    On February 1, 2005, Edith retired from BCBSD, in her exit interview, Edith wrote "Had to retire because of retaliation and constant harassment."

Damages

1.    This is an action seeking a judgment against Defendant and in Choma's favor to provide appropriate back pay with pre-judgment interest in the amount equal to the pay differential between the position of Administrative Assistant for Paul Kaplan, and Administrative Assistant for Deborah Sweeney. Specifically, Choma is seeking in excess of $94,548.00 in back pay with pre-judgment interest.

2.    Additionally, Choma is seeking non-pecuniary losses including pain, suffering and humiliation, past and future pecuniary losses, punitive damages in the amounts to be determined at trial.

3.    Choma is also seeking out of pocket expenses.

4.    Choma is also seeking costs of reasonable attorneys' fees and expenses provided by 42 U.S.C. § 2000e-5(f)(1).

5.    Choma is also seeking front pay in excess of $263,782.00 with interest.

6.      Choma is also seeking such other relief as the Court deems just and proper in the amounts to be determined at trial.

**(9)      A brief statement of what the Defendant intends to prove as a defense.**

The evidence will show that Choma's claims of discrimination are without merit and a reflection of her inability to acknowledge the fact she was not meeting the expectations of her supervisors, who had recurring concerns about the efficiency and accuracy of her work.  Instead of accepting accountability and focusing on improving her performance, Choma spent a five year span blaming others for trivial workplace matters and speculating about their possible motives.

Blue Cross Blue Shield of Delaware (BCBSD) is a nonprofit health care insurer serving the Delaware community.  It is comprised of several units, including the Medical Management Division which is primarily responsible for responding to inquiries about insurance claims and coverage issues. The Medical Management Division, in turn, includes the Quality Improvement, Utilization and Case Management, Outpatient Referral, and Behavioral Health departments.

Edith Choma began working at BCBSD in 1989 as a secretary.  She provided secretarial support for a number of employees, and eventually came to support Dr. Paul Kaplan, who had previously been Associate Medical Director.

One of the first tasks assigned to Kaplan was to obtain National Committee for Quality Assurance (NCQA) accreditation for BCBSD. The Board of Directors had issued Kaplan a mandate to secure accreditation and to obtain NCQA's highest rating level. NCQA accreditation is extremely valuable to a health care insurer.  It is the equivalent of obtaining the Good Housekeeping seal of approval.

The accreditation process is fairly lengthy and involves a complete review of the insurer's practices.  Representatives from the NCQA conduct an extensive survey of the insurer's policies, procedures, minutes of meetings, and correspondence between the insurer and members and health care providers, in order to assess the quality of the insurer's practices.  The first accreditation survey for BCBSD was scheduled for 2000, and in order to maintain accreditation, BCBSD was required to be resurveyed every three years.

Choma's principle functions for Kaplan included scheduling meetings and teleconferences, preparing files and reports, processing time sheets, and transcribing Kaplan's dictation.  She also provided administrative support for Kaplan related to the NCQA accreditation process.

Choma was one of two administrative assistants who worked in the Medical Management Division.  The other administrative assistant, Christine Zakutney ("Zakutney"), also provided some support for the division, but most of her work was confined to supporting the Director of the Outpatient Referral Department.

Kaplan was unhappy with Choma's initial performance.  He felt Choma took an inordinate amount of time to accomplish her tasks and that she lacked organization. Kaplan gave Choma her first performance evaluation in July 1999.  Choma received an overall evaluation score of 2.69 (1 being the lowest – 5 being the highest) which resulted in a 3.01% increase in salary.

Choma thereafter contacted the human resources director for BCBSD, Vicki Sessoms ("Sessoms"), to complain about her evaluation.   Sessoms subsequently met with Kaplan and informed him he should revise the performance evaluation in order to

appease Choma. On August 20, 1999 Kaplan revised the Choma's performance evaluation and gave her a score of 3.48 which resulted in a 3.9% increase in pay. Choma was satisfied with these revisions. She also received an increase in grade from 7 to 8, which resulted in an additional 1% increase in salary, which was designed to compensate for her claim that she did work for multiple directors.

Despite the revised evaluation and increase in grade, Kaplan remained generally dissatisfied with the level of Choma's performance. He was still not satisfied with Choma's performance in several key areas, including the speed in which she completed assignments and her ability to keep his files organized. Choma also continued to have problems accurately transcribing Kaplan's dictation and committee minutes.

Choma informed Kaplan that her hearing problem made it difficult to perform her duties. Kaplan asked Choma if there was any accomodation BCBSD could make to help her perform her job. Choma stated there was nothing that could be done to help her.

Choma testified she was aware that Kaplan was not satisfied with the way she performed her transcription and minute taking responsibilities. Despite Choma's deficiencies performing transcription, it remained an integral part of her job, and Kaplan testified it was more efficient for her to do it rather than himself.

Choma continued to report directly to Kaplan until July 2002 when the division was reorganized to accommodate its growth. he Quality Improvement Department were slated to be moved to a refurbished area on the other side of the building. In addition, the NCQA reaccreditation process was scheduled to occur in 2003. Kaplan, who had been heavily involved in the NCQA survey process in 2000, reassigned the primary

responsibility for obtaining reaccreditation to the new Director of Quality Improvement, Debbie Sweeney.

As part of the reorganization, Kaplan reassigned Choma, who had actively been involved in the NCQA process with him, to report directly to Sweeney. Kaplan believed Choma's familiarity with NCQA would benefit Sweeney whose responsibility it was now to ensure accreditation. He also believed that Choma's institutional knowledge of the division and its various records and committees would be helpful to Sweeney since she was new to the organization.

Kaplan reassigned another administrative assistant, Patricia Carpenter, to report directly to him. Carpenter had been employed with BCBSD since 1977, and was previously the executive secretary to Jerry Icenogle ("Icenogle"), a top executive at BCBSD.

Kaplan was familiar with Carpenter's work as executive secretary for Icenogle. He knew that she had the reputation for being organized and efficient, qualities that he believed Choma was lacking. Kaplan also had first hand knowledge of Carpenter's work in the Medical Management Division.

Kaplan met with Choma in July 2002 to inform her of his decision, and that she would be moving with the Quality Improvement department. Although Choma understood that she had no choice in the decision, she informed him she needed to "think about it."

Choma eventually contacted human resources to discuss whether the reassignment would affect her raises. Human resources informed Choma that the reassignment would have no effect whatsoever on her status or compensation, and that

the only change would be reporting structure and workplace location within the building. Choma thereafter agreed to move to her new cubicle next to Sweeney's office on August 12, 2002.

On November 22, 2002, Choma filed a charge of discrimination against BCBSD alleging that she had been discriminated against because of her age and disability (hearing). An internal investigation by BCBSD of her allegations revealed they had no merit.

Choma reported directly to Sweeney beginning in the fall of 2002. Sweeney, who had just been hired, did not assign Edith Choma much work initially. Sweeney maintained her own calendar, did her own scheduling, and did most of her own typing— functions that Choma previously performed for Kaplan. Choma continued to perform tasks associated with the NCQA process, including transcribing some dictation of meeting minutes from Dr. Kaplan that were necessary for the 2003 NCQA reaccreditation process.

Choma received her first annual performance appraisal from Sweeney in January 2003. Sweeney obtained input from Kaplan because he was still providing Choma with some work related to the NCQA process. Overall, Choma was given a score of 3 or "meets expectations," for her performance evaluation.

While Sweeney initially had no problems with Choma's work quality, she did observe a recurring issue with Choma being away from her desk for prolonged periods of time and not putting in a full day's work. On one occasion, Choma had returned late from lunch with several coworkers. Although all of the employees worked in the Quality Improvement, Choma was the only nonexempt hourly employee in the department.

Choma had been informed by Sweeney in the past that lunchtime was limited to one hour.  When she returned late Sweeney verbally admonished Choma.  Sweeney did not admonish the others because they were exempt salaried employees.

Choma received her 2003 performance evaluation on or around January 27, 2004. She received a overall score of 3 out of 5 for a "meets expectations."  In the evaluation, Sweeney noted that Choma, although requiring some assistance with problem-solving, had shown greater initiative in 2003.  Sweeney noted that one of the duties Choma needed to be ready to assist with was the preparation of claim approval and denial letters. Under the NCQA accreditation guidelines, BCBSD had a certain time frame in which to respond to claims for benefits and appeals of claim determinations.  BCBSD was subject to various financial penalties and fines for failing to timely respond to the claims and appeals.

BCBSD's responses were in the form of approval, denial or appeal letters.  Denial letters involved initial determinations where it is determined that the claim must be denied in whole or in part. If the provider or member appealed the initial determination, the appeal letter is the response to their request for reconsideration.  In 2002, the response letters were automated at BCBSD.  However, in January 2003, a new Department of Labor (DOL) regulation went into effect that required the letters to be manually generated.

The process for typing the letters was fairly straightforward.  The typist would use a template form letter, insert the relevant information supplied by nurses or claims agents, and produce a letter.  The letters would be reviewed by Sweeney or Eileen Brown prior to mailing.  The typist was generally responsible for making sure punctation was accurate

and font sizes were uniform in the text of the letter.  Choma testified that she found

typing the letters to be monotonous, but agreed that it was very important that the letters

were done accurately and on a timely basis.

Initially, the volume of response letters generated was not all that great and could

be performed by one person.  By 2004, however, BCBSD membership increased

significantly and this resulted in an increase in the number of response letters required to

be processed.  In early 2004, most of the letters were still being processed by Pat

Carpenter, although Sweeney had informed Choma in her last evaluation that she would

be expected to assume some of this responsibility.

In July 2004, Pat Carpenter took her planned two week vacation.  Choma was

assigned to complete the letters during Carpenter's absence.  Choma asked Sweeney if

she could work overtime to do the letters, but Sweeney informed her that it was not in the

budget and to complete the letters during her normal working hours.  When Carpenter

returned from vacation, however, many of the letters assigned to Choma had not been

typed and there were numerous errors in those that were completed.

Sweeney determined that Carpenter could no longer perform the letter function by

herself.  The volume of letters being generated was steadily increasing, and a new system

BCBSD had developed for automatically generating the letters had been put on hold for

the foreseeable future due to a recent change in NCQA standards. As a result, Sweeney

divided the responsibility for completing the letters between Carpenter and Choma.

Several weeks later, on Friday, August 20, 2004, Choma slipped on the cement

steps outside her home and injured her right wrist.  She was treated by an emergency

room physician and returned to work on Monday, August 23, 2004.  Choma wore a soft

cast on her right wrist and provided a medical note from the treating physician which did not contain any description of work restrictions.

Sweeney suggested that Choma consider applying for short term disability because of her wrist, but Choma stated that she preferred to work.  Sweeney asked Choma if she could distribute mail, make photocopies, and perform other duties that required only one hand, but Choma preferred to remain seated so she could keep her right arm elevated.

Choma was assigned a batch of response letters to type, but by the end of the day she had completed very few letters.  Choma also informed Sweeney that she had worked through lunch.  Sweeney reminded Choma that she was required under BCBSD's policy to take a lunch.  Choma also disclosed to Sweeney at this time that she worked overtime in July 2004 during Carpenter's absence, despite Sweeney's instructions to the contrary.

The next day, on August 24, 2004, Sweeney revised Choma's duties to limit her to copying, sorting and distributing mail. On August 25, 2004, Choma's primary care physician, Dr. Hilton, issued her a note indicating that she could not perform any work duties that involved her right arm.  Dr. Hilton stated that if such restrictions were not feasible that Choma should remain out of work.  Choma was subsequently placed on short-term disability leave.  A worker from a temporary agency completed Choma's duties during her leave.

Choma returned to work on September 20, 2004 and no longer had any restrictions on using her right hand.  Despite having no restrictions on her ability to type, Choma was still falling behind in the completion of response letters. On September 30, 2004, Sweeney began formally tracking Choma's progress with the completion of letters.

DB01:2627234.2                                                    052305.1028

To gauge how many letters should be completed, Sweeney requested Carpenter and Choma to monitor how long it took them to complete letters and recorded their error rates. This was accomplished by having them write down the time of the day they started typing the letters and when they finished.

By early October 2004, Choma had been assigned the letter responsibilities for a number of weeks, yet her production of letters and accuracy rate were far below that of Carpenter's. Sweeney contacted human resources and asked for assistance in developing a performance improvement plan (PIP) for Choma that would outline BCBSD's expectations in a number of areas, including completion of the letters.

Sweeney had never drafted a PIP before and worked with Donna May of human resources over several weeks to develop an improvement plan that would be fair and set reasonable goals. Unbeknownst to Sweeney or May, however, Choma discovered the draft PIP on Sweeney's hard drive file and began reviewing it as early as October 11, 2004. Choma accessed the draft, which was marked confidential, on at least five occasions during the month of October.

Aware that Sweeney was in the process of administering a PIP, Choma filed a charge of discrimination with the Delaware Department of Labor alleging retaliation on October 22, 2007. The following week, on October 27, 2004, Choma emailed Susan Slaysman ("Slaysman"), the human resources manager, and stated that she wished to retire on January 3, 2005, and wanted to confirm that by working until end of the year she would receive her 2004 incentive compensation bonus. She also stated that she felt she had no option but to retire because she was being harassed. Slaysman immediately contacted May in human resources to investigate Choma's harassment allegation.

May met with Choma to discuss her complaint, and then spoke with Sweeney about the allegations of harassment. After investigating Choma's complaint, May concluded that there was no basis for her allegation of harassment, and that Sweeney was just trying to get Choma to meet performance expectations.

On Friday, October 29, 2004, Sweeney and May met with Choma to administer the PIP. The plan included performance objectives for processing letters, obtaining approval for overtime, adhering to lunch breaks, and confirming hours worked. To confirm hours worked, Sweeney asked Choma to send an email to her at the beginning and end of the day and when she went for lunch.

On Monday, November 1, 2004, Choma reported to work and sent an email to Sweeney at 7:56 a.m. informing her that she was "checking in at 7:50 a.m." Sweeney asked if she had performed any work prior to arriving. Choma worked one more day at BCBSD, then took a medical leave of absence. She never returned to work at BCBSD, and officially retired on February 1, 2005 at the age of 65, receiving her full pension and retiree health benefits from BCBSD.

**(10)    Statements by counterclaimants or cross-claimants comparable to that required of Plaintiff.**

This is not applicable because Defendant has not brought any counterclaims.

**(11)    Any amendments to the pleadings desired by any party with a statement whether it is unopposed or objected to, and if objected to, the grounds therefor.**

None. Plaintiff has dismissed her state law claim for breach of the implied covenant of good faith and fair dealing.

**(12)    The parties certify that two-way communication has occurred between persons having authority in a good faith effort to explore the**

**resolution of the controversy by settlement but those efforts were
unsuccessful.**

The parties have participated in a mediation with Magistrate Judge Mary Pat
Thynge but have not been able to resolve this case.  The parties will continue to explore
the possibility of a resolution.

**(13)    Any other matters which the parties deem appropriate, including
whether or not the trial should be bifurcated.**

None.

**(14)    Limitations, Reservations and Other Matters.**

Defendant's reserve all issues with respect to its pending motion for summary
judgment.  Defendant will submit any *motions in limine* in accordance with the Court's
briefing schedule established at the pretrial conference.

## TRIAL TIME ESTIMATES

**A.    Length of Trial**.  Plaintiff's trial estimate is that the probable length of
trial is 5 days.  Defendants believe that the trial will last approximately 5 days.

Mark appropriate box:    Jury    ☒

Non-Jury    ☐

**B.    Number of Jurors.**  There shall be ____ jurors and _____ alternate jurors.

**C.    Jury Voir Dire.**  The Court will conduct voir dire.  The parties have
submitted voir dire questions.

IT IS ORDERED that this Final Pretrial Order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice or for good cause shown.  Such modification may be made either on application of counsel for the parties or on motion of the Court.

DATED: _____

_____
Judge Joseph J. Farnan Jr.

Approved as to form and substance:

MARGOLIS EDELSTEIN

_____
/s/ Herbert W. Mondros
Herbert W. Mondros (Bar I.D. 3308)
750 Shipyard Drive, Suite 102
Wilmington, Delaware 19801
Telephone:  (302) 888-1112
Facsimile :  (302) 888-1119
hmondros@margolisedelstein.com
Attorneys for Plaintiff

DATED:  August 28, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
/s/ Scott A. Holt
Scott A. Holt, Esquire (Bar I.D. 3399)
Adria B. Martinelli (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19801-0391
Telephone:  (302) 571-6623
Facsimile :  (302) 576-3299
sholt@ycst.com
Attorneys for Defendant

DATED:   August 28, 2008

052305.1028